THADDEUS HOYT *against* GOULD DIMON.

MOTION for a new trial.

This was an action of *disseisin,* for a parcel of land in *Newtown.* The defendant pleaded the general issue.

On the trial, the plaintiff claimed title to the demanded premises, by virtue of the levy of an execution in his favour

*A.,* on the 22d of *September,* 1797, mortgaged a piece of land to *B.,* by deed, with covenants of seisin and warranty, to which, at the time of the execution of the deed, the mortgagor had no title. On the 25th of *September,* 1797, *C.* conveyed the same land to *A.,* by an absolute deed. Afterwards, *A.,* with intent to defraud his creditors, executed and delivered to *B.,* an absolute deed of the land. After the execution of the last-mentioned deed, *D.,* a creditor of *A.,* levied an execution on the land, and had it set off in satisfaction of his debt. In an action of disseisin, brought by *D.* against *B.,* demanding the seisin and possession of the mortgaged premises, it was held, that the covenants in the deed from *C.* to *A.,* enured to the benefit of *B.,* and that he was vested with a valid title, as mortgagee.

Held, also, that the absolute deed from *A.* to *B.,* could not affect his claim to the mortgaged premises.

Held, also, that *D.* was estopped from impeaching the validity of the mortgage deed, by setting up the subsequent title derived by the absolute deed from *C.* to *A.*

A new trial will not be granted, for a misdirection, or an omission in the charge to the jury, when such misdirection, or omission, can have no effect upon the final decision of the cause.

against one *Austin Nichols ;* which levy was made on the 17th of *April,* 1810.

The defendant claimed title, by force of a mortgage deed from *Austin Nichols* to one *Philo Norton,* dated the 22d of *September,* 1797. This deed was given to secure the payment of four promissory notes, of 1500 dollars each, one of which was made payable in one year after the date and execution of the deed. There was a regular series of conveyances, through sundry persons, from *Norton* to the defendant.

It also appeared, that one *Daniel Nichols* was the owner of the premises, until the 25th of *September,* 1797, when he, by deed, containing the usual covenants of seisin and warranty, conveyed the same to *Austin Nichols ;* and that, on 8th of *January,* 1798, *Austin Nichols,* by an absolute deed, conveyed the land to *Norton.*

It was contended in behalf of the plaintiff, that both the mortgage deed, and the absolute deed from *Austin Nichols* to *Norton,* were given for the purpose of enabling him to avoid the claims of his creditors ; and were, therefore, void, by the provisions of the statute against fraudulent conveyances.

The plaintiff, also, contended, that if the evidence of fraud exhibited on the trial, in relation to the execution of these deeds, was insufficient to shew, that the mortgage deed was fraudulent ; yet, if it was sufficient to prove, that the subsequent absolute deed was void, it destroyed the defendant's title. He, therefore, claimed, that as the absolute deed was executed and delivered before the estate became vested in the mortgagee, at law, the mortgage title was superseded ; and that the defendant held possession, by virtue of the absolute deed only.

It was also contended, that nothing passed to *Norton,* by the mortgage deed of *Austin Nichols,* he having no interest in the land, at the time of the execution and delivery of the deed ; his right having been acquired subsequently, by the deed of *Daniel Nichols.*

The court, in their charge, instructed the jury, that the only material fact for them to find, was, whether the mortgage deed from *Austin Nichols* to *Norton,* was fraudulent ; if so,

that they must find their verdict for the plaintiff; if otherwise, that they must find for the defendant. The jury returned their verdict for the defendant: And the plaintiff moved for a new trial, on the ground of a misdirection; which motion was reserved for the opinion of the nine Judges.

*R. M. Sherman*, in support of the motion.

1. The mortgage deed from *Austin Nichols* to *Norton*, was void, and inoperative, on the ground, that the grantor had no title, when the deed was executed and delivered. The only title which he ever had, was derived from the deed of *Daniel Nichols*, which was executed three days after the execution and delivery of the mortgage deed.

This deed was void, on another ground. By force of the absolute deed from *Austin Nichols* to *Norton*, all claim by virtue of the mortgage, was destroyed.

2. The plaintiff's claim rests, principally, on the ground, that the deed of warranty from *Austin Nichols* to *Norton*, was valid, as between the parties; although, as to creditors, it was fraudulent. Where the condition of a mortgage deed is performed, according to the terms of it, the estate is revested in the mortgagor. The question, then, is, did the execution of the absolute deed from *Austin Nichols* to *Norton*, before the law day was out, amount to a performance of the condition, or an extinguishment of the mortgage? This transaction stands on the same ground, as though the mortgage had been discharged at the time when the absolute deed was given. The mortgage no longer existed: It was no longer a pledge for the security of money. The party giving the absolute deed, covenants, that the land is free from all incumbrances. This deed amounted to a release of the equity of redemption. This transaction, as it relates to the parties, was, in legal operation, an extinguishment of the mortgage, and a sale of the land to the grantee. The argument is not founded upon the principle of *merger ;* but that the execution of the second deed, is a fulfilment of the condition of the first. The covenants contained in the former,

go to shew, that the condition of the latter is performed, and that the mortgage debt is paid.

*Daggett* and *N. Smith*, contra.

1. It is objected, by the plaintiff, that *Austin Nichols* had no title to this land, when he executed the mortgage deed to *Norton.* It is a sufficient answer to this objection, that the deed of *Daniel Nichols* enured to the benefit of the grantee. The execution of this deed vested a title in *Norton*, under whom the defendant claims. The principle of law is well established, that if a man grants land, with covenants of seisin and warranty, to which he has no title, and afterwards, gains a title, it passes to the grantee. These covenants run with the land ; and the party is estopped to claim any thing against them. *Coe* v. *Talcott*, ante, 88. 1 *Shep. Touch.* 182. If *Norton* had a valid title against the grantor, he also had title against his creditors, for they must claim under him. The plaintiff cannot, therefore, claim the land, as he is estopped by the covenants contained in the mortgage deed.

2. It is also objected, that by the absolute deed of *Austin Nichols*, the mortgage deed was annihilated. This, by no reasonable construction, can be considered as a performance of the condition of the mortgage. There was no evidence of the payment of money : Nothing was done, except simply the execution of the absolute deed. The execution of this deed, could have no other effect, than that of conveying the equity of redemption. A second conveyance, which is fraudulent, can never defeat a prior valid conveyance.

BALDWIN, J. From the statement of this case, it is apparent, that the right of the plaintiff to recover, depends on his shewing, that no title was derived to the defendant, by either of the deeds. If either conveyed a valid title, the defendant was entitled to a verdict.

As the jury found the mortgage deed not to be fraudulent, and thereupon, gave their verdict for the defendant, the plaintiff cannot claim a new trial, on the ground, that the last deed was not submitted to their consideration ; nor on the

ground, that the direction given them was incorrect, unless, the law be so, that the mortgage deed, though not fraudulent, was of no effect for want of title in the grantor, at the time of its execution, and could not be made valid by subsequent title; or that the mortgage title was destroyed, by the subsequent absolute deed. The court, when they charged the jury, must have considered the mortgage as legal and valid, unless made void, by the statute against fraudulent conveyances; which, as a question of fact, they submitted, with the evidence, to the jury. I am of the same opinion.

It has been decided, in *Connecticut*, in conformity, I conceive, to the principles of the common law, that a grantor, with warranty, but without title, is estopped from denying his former title, or claiming under a subsequent one; and such covenants running with the land, this estoppel will affect and bind all those who claim under the grantor; of course, in this case, *Austin Nichols*, and the plaintiff, who claims under him, are estopped from setting up the subsequent title derived from *Daniel Nichols*, to defeat the mortgage deed. Town of *Norwich* v. *Congden*, 1 *Root's Rep.* 222. *Co. Litt.* 265. *Trevivan* v. *Lawrence*, 6 *Mod.* 258. S. C. *Salk. Rep.* 276. *Palmer* v. *Ekins*, 2 *Ld. Raym. Rep.* 1551. The subsequent title will thus enure to the benefit of the first grantee. The mortgage, then, is valid, unless defeated, by the absolute deed from *Austin Nichols* to *Philo Norton*, the mortgagee. This, it is claimed, absorbed the mortgage, though void as to creditors, it being good between the parties.

The question, on this branch of the case, can arise only on the ground, that the absolute deed is fraudulent; for, the moment we admit its application to the mortgage, as payment of that, either by express contract, or legal inference, we admit a legal consideration, which may give validity to the deed: For, if given and received *bona fide*, for a good and valuable consideration, as it would be, if given in discharge of a pre-existing mortgage of equal value, the title under it would be, unquestionably, good. Admitting, then, that this latter deed was executed, without consideration,

Nov. 1813.

HOYT
v.
DIMON.

and with the fraudulent intent to defeat creditors; it is, as to them, by statute, utterly void. It can have no effect as to the creditors. Their claim on the property still remains as though the deed did not exist; of course, it can have no effect, by legal inference, to absorb the mortgage debt. They must take the estate, (as it was before such void deed was given,) subject to the mortgage.

It would be a strange perversion of a statute, in its provisions highly penal, to give effect, by construction, to an instrument, which, by the letter of the statute, is expressly made void.

The object of the creditor is to seek a fund for the payment of his debt. To secure him in this, the statute makes void, all deeds fraudulently designed to defeat him. In this case, the fraudulent deed was calculated to defeat him of the fund remaining in the equity of redemption. The statute, by making that deed void, leaves the property liable to his demand, subject only, as it was before, to the mortgage lien. This, I conceive, is precisely what the statute intended, and it preserves the rights of all the parties.

The construction, contended for, would do injustice to the mortgagee, by subjecting him to penalties, in the loss of his debt, which the statute never intended. It would enlarge the fund of the creditor, which the statute meant merely to protect. It would give effect to a deed, to the advantage of a creditor, which the statute, in express terms, as to him, makes void. Whatever, therefore, might be the effect of the absolute deed, upon the mortgage, as between the parties, it can have none, as to the creditor. As to him, the mortgage remains as it was.

If this reasoning is correct, the plaintiff has no reason to complain, that the only question submitted to the jury, was the validity of the mortgage deed; for, having established that, their verdict must have been for the defendant, whether the absolute deed was fraudulent or not.

All the other Judges concurred in this opinion, except *Edmond* and *Ingersoll*, Js., who did not judge.

New trial not to be granted.