STOW and others *against* WYSE.

To render the vote of an incorporated company valid as the act of the cor-
poration, the meeting at which it was passed, must have been warned, in
the mode prescribed by the charter or by-laws, or, in the absence of any such
provision, by personal notice to the members.

The general agent of a manufacturing company is not authorized, without a
special power, to transfer, by deed, the real estate of the company.

A party who has executed a deed, is thereby estopped from disputing not only
the deed itself, but every fact which it recites.

Therefore, where a person executed a deed in behalf of a manufacturing
company, and therein declared, that he was empowered, by a vote of the
company, to execute such deed ; it was held, that he was thereby estopped
to deny that he was thus empowered.

All persons claiming under and through the party estopped by a deed, are
bound by the estoppel.

THIS was an action of trespass *quare clausum fregit ;* tried,
on the general issue, at *Middletown, February* term, 1828, be-
fore *Daggett,* J.

It was admitted, that the defendant entered on the premi-
ses, in *May*, 1825, the time specified in the declaration, and con-
tinued in the possession and occupation thereof until the com-
mencement of this suit, claiming right as the tenant of the *Mid-
dletown Bank ;* and the only question was, whether the plain-
tiffs had title to the land, or whether it was in the *Middletown
Bank.* The title of the bank was derived from a mortgage
deed of the *Middletown Manufacturing Company*, dated the
29th of *March*, 1817, to the bank. The title of the plaintiffs
was derived from a mortgage deed, executed by *Arthur W.
Magill*, some years afterwards. *Magill's* title was acquired,
by the regular levy of an execution in his favour against the
*Middletown Manufacturing Company* subsequent to the exe-
cution of the deed to the bank. The *Middletown Manufac-
turing Company* were the undisputed owners of the land
prior to and until their deed of the 29th of *March*, 1817,
above mentioned. That deed was given to the *Middletown
Bank*, by *Arthur W. Magill*, as agent for the *Middletown
Manufacturing Company.* It begins thus : " I, *Arthur W. Ma-
gill*, of the town of *Middletown*, agent for the *Middletown
Manufacturing Company* of said town, being empowered, by a
vote of said company, in pursuance of said power," &c. It
contains the usual covenants of seisin and warranty, thus ex-
pressed : "And I do hereby covenant for and in behalf of said
*Middletown Manufacturing Company*, with the said *President*

*Directors and Company of the Middletown Bank,* that at and until the ensealing of these presents, said *Manufacturing Company* are well seised of the premises, as a good indefeasible estate in fee simple, and have good right to bargain and sell the same ; and that the same is free from all incumbrances ; and I do also hereby bind said *Manufacturing Company* to warrant and defend the above granted and bargained premises to the said *President, Directors and Company,* and their assigns, against all claims and demands whatsoever." The authority of *Magill* to execute the deed, was claimed, by virtue of a vote of the company, expressly giving such authority, in connexion with the admitted fact, that the directors, in *May,* 1816, regularly appointed him agent of the company for the year then ensuing, and that he had been agent, by virtue of like appointments, from that time until after the execution of the deed in question. The power of the directors to make such appointment, was derived from the following provision in the 6th section of the charter of incorporation : " The said directors for the time being, or a majority of them, shall have power to appoint such clerks, agents and servants as they judge necessary, and to agree with them, and allow such compensation for their services and labour as they judge reasonable." The vote of the company referred to describes the meeting at which it was passed, thus : "At a meeting of the *Middletown Manufacturing Company,* held at *Middletown,* the 29th of *March,* 1817. Present, the shares of *Thomas Barlow,* represented by *Alexander Wolcott,* being 14, and the shares of *Arthur W Magill,* being 14, and one share belonging to *Henry Wolcott.*" The vote was in these words : " Voted, that *Arthur W. Magill,* agent for the company, be, and he hereby is, authorized and directed, for and in behalf of said company, to make, execute and deliver to the *President, Directors and Company of the Middletown Bank,* a good and valid mortgage deed, with warranty, of the real estate of said company, together with the steam engine and its appurtenances, as collateral security to said *President, Directors and Company,* for the payment, at such time as said agent may deem proper, of the debts due from said *Manufacturing Company* to said *President, Directors and Company.*"

To shew that the mortgage deed to the *Middletown Bank* was void, the plaintiffs offered parol evidence, to prove, that the persons named in the vote of the 29th of *March,* 1817.

*Middlesex,* convened and passed that vote, without any notice to the other
July, 1828. members of the *Manufacturing Company;* that the whole

Stow
*v.*
Wyse.

stock of the company consisted of forty shares of 1000 dollars each ; that the persons named in the vote as stockholders owned respectively the number of shares therein stated, and no more ; and that the rest were owned by other persons, several of whom resided in *Middletown.*

The plaintiffs prayed the court to instruct the jury, that if they should find these facts proved, the deed given by *Magill* to the *Middletown Bank,* was void. The defendant insisted, that if all these facts were true, still the title of the *Middletown Bank* was good ; but he contended, that as the plaintiffs derived their title from *Magill,* they were by law estopped from shewing any of the facts by them set up in avoidance of *Magill's* deed ; and that the title thereby purported to be conveyed to the *Middletown Bank,* was good against *Magill* and all claiming under him.

The judge charged the jury, that the vote of the directors appointing *Magill* agent, vested him with no power to mortgage the real estate of the *Manufacturing Company ;* that if no notice was given of a meeting of the stockholders, at the time when the vote mentioned in the deed was passed, it was not an act of the company, and was wholly void, and conferred no power on *Magill* to execute the deed ; and that the plaintiffs were not estopped from shewing these facts in avoidance of the deed. (*a*)

The jury returned a verdict for the plaintiffs ; and the defendant moved for a new trial, for a misdirection.

*N. Smith* and *Sherman,* in support of the motion, contended, 1. That *Magill,* as the general agent of the company, had power to mortgage the property in question. He had been the general agent of the company, from the commencement of its operations, and managed all its concerns. There is nothing in the nature of *land* to exempt it from the scope of his agency. It will not be denied, that the corporation could borrow money, and pledge its estate, real or personal, as security. How is this to be done ? Only by its agent. How are the public to know what are the powers of the agent ? If they appear to be special, let the terms be examined ; if general, the

(*a*) The last part of the charge was given merely, that the point might be raised in this Court.

agent may do every thing in behalf of the corporation, which the corporation can do, so far as the right of the opposite party against the corporation, is concerned.   According to modern decisions, not in strict accordance with the principles of the ancient common law, a corporation, like an individual, is responsible in the manner in which it permits its agent to hold it out to the world, and is bound, by the acts, which its agent does, under its eye.   *Bulkley* & al. v. *The Derby Fishing Company*, 2 *Conn. Rep.* 252.   Gross injustice would result from a different rule.   *Magill*, as agent of the company, applies for a loan of money to carry on its business.   The lender learns that he has general powers, and sees him managing the whole concerns of the company.   He lets him have the money, and takes his security on the real estate of the company. Ought he not, in justice, to hold the security thus taken ?   Who ought to suffer,—if either,—the company, or the lender ?

2. That as *Magill* conveyed the premises, stating in his deed a power to convey, he is estopped from denying that power ; and the plaintiffs, who claim under him, stand on the same ground.   *Willoughby* v. *Brook, Cro. Eliz.* 756.   *Strowd* v. *Willis, Cro. Eliz.* 362.   *Fairtitle* d. *Mytton* & al. v. *Gilbert* & al. 2 *Term Rep.* 169. 171.   *Jewett's* case, 1 *Roll. Rep.* 408.   *Com. Dig. tit.* Estoppel. A. 2.   *Palmer* v. *Ekins,* 2 *Stra.* 817.   *Coe* v. *Talcott,* 5 *Day* 88.   In the case last cited, it was held, that an administrator, afterwards coming in by title as heir, and also his assigns, were estopped from denying a title in a deed given by him as administrator, though of a right which he had not power to convey.

A writing estops in two ways ; 1st, by the declaration of a fact ; 2ndly, by a covenant, to prevent circuity of action. Here *Magill* is estopped on both grounds.   He has declared the fact of his having power to convey ; and he has rendered himself personally liable, if he had not the power.

That an estoppel is odious, does not mean that the law of estoppels ought to be abrogated, but that it is to be applied strictly—*i. e.* every thing necessary to constitute an estoppel, must appear on the writing.   In such case, its effect is highly beneficial.

*Stanley* and *T. S. Williams*, contra, contended, 1. That the vote of the directors appointing *Magill* agent, and his acting in that capacity, did not empower him to convey the real es-

Stow
*v.*
Wyse.

tate of the corporation. [On this point the counsel were stopped by the court.]

2. That the vote of the 29th of *March*, 1817, was not the act of the company, and invested *Magill* with no authority to execute the deed in question ; no notice of the meeting having been given to the stockholders. [This was conceded by the opposing counsel.]

3. That *Magill* was not estopped to say, that no title passed from the *Middletown Manufacturing Company* to the *Middletown Bank*. To make the doctrine of estoppel applicable to a conveyance of land, the person to be estopped must either be the grantor of the land, or he must bind himself personally, by the covenants. In this case, both the grant and the covenants were those of the company, and not *Magill's*. He did not profess to own the land, or attempt to transfer any title of his own. In his individual capacity, he entered into no covenant. He did not receive the consideration. He practised no fraud. He described himself as agent of the company ; and he was such. He referred to his special authority, by virtue of the vote of the 29th of *March*, 1817 ; but he did not covenant or, state, that the meeting was regularly and legally warned. He did not state the vote to be otherwise than it was. For its validity he was no more responsible than the clerk who recorded it. How then can he be estopped ? And if he is not so estopped, the plaintiffs are not.

Estoppels are odious, because they shut out the truth ; and they are never extended to cases, to which they are not clearly and strictly applicable. An indispensable requisite of an estoppel is, that it must be *reciprocal*. *Bradford* v. *Bradford*, 5 *Conn. Rep.* 127. 132. *Shep. Touch.* 277. *Brereton* v. *Evans, Cro. Eliz.* 700. Now, *Magill* could not, by estoppel, treat this as a valid deed. The defendant, then, cannot, by estoppel, make it a valid deed as against *Magill*.

DAGGETT, J. The plaintiffs, who claim under *A. W. Magill's* deed to them, allege, that no title passed, by the deed to the *Middletown Bank ;* for that *Magill* had no authority to bind the *Middletown Manufacturing Company*, and transfer the title. The deed is attempted to be supported, or rather *Magill's* power to make it, on two grounds. The first is the vote of the *Middletown Manufacturing Company*, passed on the 29th day of *March*, 1817, the day of the execution of the

deed, by which he was authorized to make a mortgage to the *Middlesex,* bank of the premises. On the other hand, it is insisted, that July, 1828. the meeting was illegal, and the acts done void. It is very clear, that a meeting of the stockholders, constituted as this was, could do no acts binding on the company. Though a meeting regularly warned, would be competent to do any act within their chartered powers, by a bare majority; yet if not thus warned, their act must be void. If no particular mode of notifying the stockholders be provided, either in the charter or in any by-law, yet personal notice might be given; and this, in such case, would be indispensable. The counsel for the defendant do not press this point; and I think it quite untenable.

Stow<br>v.<br>Wyse.

The second ground taken in support of the power of *Magill* to execute the deed, is, that he was the general agent of the company. It becomes necessary here to ascertain the extent of his powers as agent. By the 6th section of the act incorporating the *Middletown Manufacturing Company*, the directors of the company were authorized to appoint such *clerks, agents* and *servants* as they judge necessary. *Magill*, when he made the deed in question, was acting under an appointment made by the directors of the company, on the 24th of *May*, 1816. By this act of the directors, and by this alone, his powers were conferred. It is not to be denied, that they are general; but still they must be limited, by the duties to be performed, and the business to be transacted. This is reasonable, and results necessarily from the nature of the case, and is analogous to powers conferred in all similar instances. It was never thought before, that a mere agent of a manufacturing company was authorized to transfer, by deed, the real estate of the company. It may be incidental to his power as agent to borrow money, give promissory notes, and do many other acts, in the ordinary course of the business of the company; but the idea is quite novel, that merely as agent, he might sell or convey the real estate. To effect such an object, a specific authority seems indispensable; nor is there any principle or precedent in support of the power set up in this case. The deed, therefore, cannot be upheld on either of these grounds; and thus far, the charge is strictly correct.

Another position, however, is taken by the counsel for the defendant, which is fatal to the plaintiffs' title. *A. W. Magill*

*Middlesex,*
July, 1828.

Stow
*v.*
Wyse.

is *estopped,* by his deed to the *Middletown Bank,* to allege that he was not authorized by the *Middletown Manufacturing Company* to convey ; and if so, it is not doubted, that his grantees are estopped. On this point the judge charged the jury, *pro forma* merely, and to the end that the question might be settled in this court, and thus future litigation be prevented, that the plaintiffs might recover.

In looking into *Magill's* deed, it appears, that he begins it with a declaration, that he is the agent of the *Middletown Manufacturing Company,* authorized by vote of the company to execute the deed ; and in pursuance of the power, he executes it, and, in behalf of the company, covenants, that they are well seised, and that they will warrant and defend the premises. There are high opinions, that if he was not authorized, he is personally bound by the covenants ; and that an action might be maintained thereon against him ; (*White* & al. v. *Skinner,* 13 *Johns. Rep.* 307. *Skinner* v. *Dayton* & al. 19 *Johns. Rep.* 513.) but waiving the consideration of a point not necessary to be decided, *A. W. Magill* is estopped, by the declaration and covenants in the deed, that he was authorized, ever to deny it. Without multiplying authorities on a point rendered clear by numerous cases, it is sufficient to state, that where a party has solemnly admitted a fact, by deed, under his hand and seal, he is estopped not only from disputing the deed itself, but every fact which it recites. 2 *Stark. Ev.* 30. 1 *Phill. Ev.* 410. *Huntington* v. *Havens,* 5 *Johns. Chan. Rep.* 26 Now, *Magill* has declared under his hand and seal, that he was empowered, by a vote of the company, to execute this deed. Can he ever say, that he was not thus empowered ? If, on the next day after the deed to the bank was executed, he had procured a valid deed from the company, and had brought ejectment against the bank, could he have sustained it against the declarations in his deed ? I think he must have been estopped. If so, then all persons claiming under and through him are estopped. 1 *Stark. Ev.* 305. *Hoyt* v. *Dimon,* 5 *Day* 483. 1 *Phill. Ev.* 10.

These principles are in entire accordance with the cases of *Fairtitle* d. *Mytton* & al. v. *Gilbert* & al. 2 *Term Rep.* 169. 171. *Palmer* v. *Ekins,* 2 *Stra.* 817. *Com. Dig, tit.* Estoppel. A. 1. 2. 3. and B.

There must, therefore, be a new trial.

The other Judges were of the same opinion, except BRAIN-
ARD, J., who was absent.

New trial to be granted.