Monell, J.
When this case was before the Court upon the former appeal, it was held, that the matters set forth in the answer, and which had been offered to be proved on the trial, constituted a defense to the action. I do not, therefore, propose to examine at much length any of the questions disposed of by the former decision, except as those questions may be affected by the evidence given on this trial.
It is now claimed that such evidence renders the proceedings to obtain the permission of the Court to convey the plaintiffs’ property entirely void, for the following reasons:
First—That no legal notice was given of the meeting at which the Trustees were authorized to make the application;
Second—That the resolution containing such authority was not adopted by a majority of all the corporators of the church; and,
Third—That a portion only of the pew owners and pew holders, who consented to such application, were corporators.
The only notice for the first meeting of the society was given from the pulpit of the church, notifying the- church and congregation that a meeting would be held for the purpose of authorizing the trustees to take the proper legal steps for effecting the union. Such notice, it is claimed, was not sufficient to bind the corporation, by a vote of a majority of those present at *118 the meeting, unless such vote was a majority of all the corporators of the church.
The eleventh section of the act to provide for the incorporation of religious societies (Laws 1813, vol. 2, p. 212, see. 11) provides, that an order for the sale of its real estate may he made “ upon the application of the “ corporation,” but no mode or form is anywhere prescribed for making the application.
The corporation is the aggregation of the male members, of church and congregation, who have been stated attendants, and have contributed to its support; and it is such aggregation that is authorized to make the application.
All corporations act by and through their officers and agents, whose powers are delegated at public or private meetings. Such meetings may be convened in such manner, upon such notice, and at such place, as may be provided in the by-laws, or otherwise agreed upon by the corporation. The statute does not require that any notice shall be given; and it is entirely competent for a corporation to adopt any by-law respecting the notices which may be proper or necessary to be given, or in any other manner prescribe the mode of notifying the corporators, provided it is not in conflict or inconsistent with the statute. The only notice of which the statute has prescribed the nature and manner of giving, is in respect to the election of trustees; and it is provided, that the minister, elders, or deacons, &c., shall “publicly notify ” the congregation of the time and place of the election. But whether such notification shall be by announcement from the pulpit, or, as the plaintiffs claim it should be, in respect to other meetings, by personal service upon each corporator, is not defined. Yet I think it cannot he successfully contended that a notice announced from the pulpit would render an election of trustees void. In one case (People v. Peck, 11 Wend., 604), the Court held that even the omission altogether to give the notice prescribed by the statute in respect to elections of trustees, did not vitiate an election. If any thing can be gained from the statute, it is, that if the legislature thought the rights and interests of corporators, in so important a matter as *119 the selection of trustees, in whom is vested the custody and control of all the property,' were sufficiently protected, by requiring a mere public notice in the church, it is not unreasonable to suppose that a similar notice of meetings for other purposes, of no more importance, would also be sufficient.
It may be, that the rule contended for by the plaintiffs is, to a limited extent, applicable to .all that class of corporations in which the corporators or stockholders have a material and direct interest in the property of the corporation, and have a right to be consulted with regard to its disposition. In those cases, I have no doubt that, if it is desired to get authority from the stockholders, and there is no particular mode of notifying them provided either in the charter or in any by-law, personal notice should be given. But in a religious corporation, where the corporators have not, individually, any pecuniary interest, and where any male person, who merely statedly attends divine worship and contributes a few pence annually to the support of the church, is a corporator, no such strictness can be required. And therefore, if a meeting is convened, after a public notice given in the manner usually adopted for giving notices of all meetings of the church and congregation, the proceedings of such meetings cannot, it seems to me, be otherwise than valid and binding upon all the corporators.
The two cases to which we were referred by the plaintiffs’ counsel have not, upon examination, been found to strengthen the position, that the notice of the meeting, in the case before ns, was not sufficient to bind the corporation. In one of the cases (Wiggin v. First Freewill Baptist Church of Lowell, 8 Met., 30), the decision was put upon the ground that there were special provisions in the incorporating law, directing the manner in which meetings should be convened, which were, “ in such manner as the society shall, by any by-law or vote, provide;" if there be no by-law or vote, then “ in such manner as the assessor, or the standing committee, shall, in their warrant for such meeting, direct.” And there was a further provision in case the assessors or committee refused or neglected. The meeting was *120 not called in any of the ways provided, and the Court merely, and very correctly, I think, decided, that the proceedings were not binding on the corporators.
The other case (Stow v. Wyse, 7 Conn., 214) was .a manufacturing corporation, and there was no notice whatever to the stockholders of the meeting, and the Court said, that if there was no particular mode of notifying stockholders provided either in the charter or in any by-law, personal notice might be given ; and it was held, in that case, that without such personal notice the meeting had no authority to direct a sale of its property. But the doctrine of that case, even if it he approved, must be confined, I think, to the class of corporations to which I have before referred, in which the stockholders, as in the case from Connecticut, have a material and pecuniary interest, and where the trustees or directors are clothed with none of the large powers which are conferred by the statute upon church trustees.
If I am correct in supposing that the notice of the meeting was sufficient and the meeting was legally convened, it necessarily disposes of the second objection, namely, that the resolution authorizing the application to the Court was not adopted by a majority of all the corporators. It was adopted by a majority of the persons present and voting at the meeting; and that, upon well-established principles, was sufficient to bind the corporation. No question was raised that a quorum was not present; nor was the right of any person to vote challenged or questioned ; and we have the right to assume that a majority of the persons entitled to vote were present. If, therefore, the meeting was legally called, and there was a sufficient number present, of those who had the right to be present, the proceedings of the meeting, adopted by a majority, were binding upon all the corporators.
The third objection has even less force. It was not necessary to obtain the consent of the pew owners or pew holders at all, and it is quite immaterial whether or not they were corporators. They certainly had no greater rights than corporators, and it was not necessary to consult their wishes, after having obtained the *121 authorization of the corporators. This was held by Mr. Justice Harris, in Matter of Second Baptist Church in Canaan (20 How. Pr. R, 324).
Hone of the objections, therefore, taken by the plaintiffs, seem to me to affect the validity and sufficiency of the proceedings to obtain the sanction of the Supreme Court to the proposed conveyance. As found by the learned Justice, the meeting was duly called and convened, and the resolutions authorizing the application of the Court properly passed, and nothing more was required to confer jurisdiction, or give binding effect to the action of the trustees.
I see no reason for disturbing such finding. The evidence, when subjected to well-understood principles, which I have attempted to express, would justify no other conclusion.
But if it were necessary to go a step farther in this case, the petition to the Court, and the order made thereupon, could be sustained on the further ground, that the authority of the corporators was not necessary, and, therefore, all question as to the sufficiency of the notice, or of the vote at the meeting, is disposed of. It has been held, by two judges at least (Matter of Second Baptist Church in Canaan, supra, and Matter of St. Ann’s Church, 14 Abb., 424), that the trustees of a religious society have power to make the application, without being authorized by the express vote of the corporation.
The fourth section of the Act of 1813 (supra;) vests all the temporalities belonging to the church, as well its real as its personal estate, in its trustees. They are authorized to purchase other real or personal estate, and to demise, lease, and improve the same; to erect meeting-houses, and to dispose of all moneys belonging to the corporation. All this authority may be exercised without consulting or obtaining the consent of the corporators; and therefore, in virtue of the care and custody of the real estate of the corporation with which the statute intrusts them, the trustees are the proper persons to obtain the sanction of the Court to a sale. As the giving or withholding its sanction is wholly in the discretion of the *122 Court, it will always listen to objections from the corporators, as was done in the case of Wyatt v. Benson (23 Barb., 327), and will probably withhold its approval, if a majority of the society is found to be opposed to thé sale. But I apprehend the Court would not entertain the application át all, unless it proceeded from the trustees; and it would not be a subject of 'legitimate inquiry to investigate the preliminary proceedings which set the trustees in motion, unless their action was attacked by those who were opposed to the sale.
In short, trustees of religious- corporations have the power and the right, <and, as I think, the sole power and right, to seek the sanction of the Court to a proposed sale of the corporate property; and if an order is made allowing the sale, and the order is executed by a conveyance of the property, it must be that the title acquired would be valid and effectual.
It was earnestly contended by the plaintiffs’ counsel, that this Court was in error in holding, upon the decision of the former appeal, that the real property of a religious corporation was alienable at common law, and that such power of alienage was merely restrained by the statute.
The confidence with which that position was attacked has led me to a further examination of the question, although it is not necessary to the decision of the case.
That corporations aggregate have at common law such right, and, independently of any statute, the absolute jus disjoonendi, which is neither limited as to object nor circumscribed as to quantity, seems to be well settled upon authority (The Mayor and Commonalty of Colchester v. Lawton, 1 Ves. & Bea., 226; 1 Sid., 161, note at the end of the case ; Sutton’s Hospital, 10 Co., 30, b ; 1 Kid on Corp., 108 ; Com. Dig., tit. “ Franchise,” and cases cited in 3 Robt., 570).
In England, this common-law right of disposition was greatly restrained, on the part of religious corporations, by numerous statutes from 13 Ed. 1 (c. 41), to 5 Geo. 3. (ch. 17), and particularly by several statutes passed in the reign of Elizabeth. By those statutes the common-law right of disposition *123 was taken away as to religious corporations. But it is enough to say that none of those statutes formed a part of the law of the Colony of ¡New York, at the adoption of our first constitution, and have not since been reenacted in this State; although the act of March, 1806, and the eleventh section of the act of 1813, are in effect a restraint upon such common-law right of alienation. Still it is understood that the right remained (Dutch Church in Garden Street v. Mott, 7 Paige, 77, 83), and-that the act of March, 1806, was passed merely to remove a doubt whether the English statutes were not applicable to church property here (Mott v. Dutch Church in Garden Street, supra). And the object, therefore, of that act was to give to every religions corporation an unlimited power to convey its real property, provided the previous consent of the Court was obtained.
The English statutes to which I have referred were enacted for no other purpose than to take from religious corporations their common-law powers of alienation. If such common-law powers had not existed, the Statutes of Westminster were supererogative and needless, and we should have to impute to the British Parliament ignorance of their own common law.
The first general incorporating act of religious societies, in this State, was passed in 1784 (1 Greenleaf ed. Laws of 1784, p. 71). That statute did not contain the present eleventh section of the act of 1813; and whether, until the act of 1806, there was any restraint upon alienation, depended upon whether the statutes of England, in regard to religious corporations, had been adopted by the colonial government in this country, of which Chancellor Walworth says there was a doubt (supra). Consequently, the special acts of 1803, authorizing sales of church property, were passed, and also the general act of 1806.
The reexamination of this question has confirmed the opinion I have heretofore expressed, that in this country, at least, the common-law right of alienation has not been taken away, unless the required sanction of the Court to a sale can be construed into something more than a restraint upon alienation.
The question, however, is of but little importance, inasmuch *124 as it is not doubted, I think, that the only correct construction of the statute is, that with the approbation of the Court a religious corporation can convey its real property, and give a valid title in fee, in the same manner and with like effect as other corporations.
I have examined the exceptions taken to the exclusion of evidence offered by the plaintiff, and do not think any of them well taken. They were offers of evidence of matters transpiring after the order had been made by the Supreme Court, and after the deed of the premises had been executed and delivered to the defendants, and would at most have tended to show that some, and possibly a majority of the corporators, did not approve of or consent to the transfer. For the reason I have already stated, such evidence would have been immaterial upon the issues in the case, and ineffectual to impair or defeat the defendants’ title, and were therefore properly excluded.
I find no error in the decision or judgment, and think they should be affirmed, with costs.