[No. 704.]

# THE STATE OF NEVADA EX REL. BIAGGIO GUERRERO, RELATOR, v. THOMAS PETTINELI ET AL., RESPONDENTS.

MINING STOCK, LEGAL TITLE TO—HOW ACQUIRED.—The legal title to mining stock, except as between the parties, can only be acquired by transfer upon the books of the corporation.

MEETING OF STOCKHOLDERS—HOW CALLED.—Where the by-laws of a corporation provide that meetings of the stockholders shall be called by the trustees: *Held,* that the action of the board of trustees is necessary in order to convene a legal meeting, and that the president of the corporation has no authority to call such a meeting.

ELECTION OF TRUSTEES—WHEN NOT LEGAL.—At a meeting of all the stockholders, where only a portion of the stockholders participated in the election of trustees; where the president, although present, did not preside ; where no president *pro tempore* was chosen, and where no person who participated in the proceedings was authorized to receive the ballots or declare the result: *Held,* that there was no legal election.

THE facts are stated in the opinion.

*Robert M. Clarke and T. W. W. Davies,* for Relator.

I.  The by-laws of the company vest the power to call meetings in the board of trustees, and, by necessary implication, withhold this power from the president.   It follows, therefore, that the call for a meeting by the president was irregular, the meeting was without authority, and the election,

if any was held, was void. (Ang. & Ames on Corporations, Secs. 488, 489, 491, 492, 495.)

II. There was no election: there was no inspectors or tellers appointed, no stock was exhibited, the number of shares was not ascertained, the names of candidates were not announced, opportunity for voting was not afforded. There was no vote by ballot; no authority was present to determine the right to vote, or to ascertain the number of votes cast, or to declare the result; nor were these things, or any of them, done by any person assuming to act for the corporation.

III. Pitagna was entitled to vote the fifteen shares of stock certificate No. 1, which he then and there had in his possession, and which then stood in his name on the books of the company, the same having been returned to him and placed completely at his disposal some weeks prior to the meeting. (2 Comp. Laws, 3397.)

*R. H. Taylor*, for Respondent.

By the Court, EARLL, J.:

This is an information in the nature of a *quo warranto* originally brought in this Court, to determine the title of respondents to the office of trustees of the Roman Capital Gold and Silver Mining Company.

It appears from the pleadings and evidence that the Roman Capital Gold and Silver Mining Company was incorporated under the laws of this State, and organized on or about the 15th day of November, 1872; that Antonio Sitaro (one of the respondents herein), Nicolo Soffia and the relator, were selected as the trustees to manage the concerns of the corporation for the first six months, and at the first meeting of said trustees the relator was elected president, and the respondent Thomas Pettineli was elected secretary of the company. The time designated by the by-laws of the company for the election of trustees to succeed those thus selected, passed without an election being held, and there was no attempt to convene the stockholders for that purpose

until March 31, 1874, when the relator, as president of the company, caused a notice to be published in the Virginia Evening Chronicle, which stated that, "A meeting of the stockholders of the Roman Capital Silver Mining Company will be held at room No. 21, Douglass Building, Virginia, at the hour of 7 o'clock P.M., on Monday, April 6, 1874, for the purpose of electing officers of said company to serve for the ensuing year, and for the transaction of such other business as may properly come before it."

The capital stock of the corporation is divided into six thousand shares, and persons representing and claiming to represent the whole thereof, assembled at the time and place designated in said notice, and among whom the president and Antonio Pitagna were the first to arrive, and each having in his possession fifteen hundred shares of the stock which was then standing in their respective names upon the transfer books of the company. Soon thereafter, the secretary, with others representing the other half of the stock, entered the room, and there being two tables in the room, at one of which the president was seated, the secretary and those who came with him placed themselves at the other. The stockholders having thus assembled, the president called the meeting to order, read the notice convening the same, and exhibited his certificates representing fifteen hundred shares of the stock, and placing the same upon the table requested the other stockholders present to exhibit theirs also. Thereupon Antonio Pitagna exhibited and placed upon the president's table certificates representing fifteen hundred shares thereof. No others exhibiting or presenting any certificates of stock, the president requested the secretary to come to his table and proceed with the election of officers. Instead of complying with the president's request, the secretary replied, "If you want a meeting come to our table;" and thereupon, at the suggestion of one Montgomery, who claimed to represent as proxy for Henrietti Pettineli, wife of the secretary, fifteen hundred shares standing upon the books of the company in her name, those who came to the room with the secretary proceeded to

ballot at his table for trustees; neither the president nor Antonio Pitagna taking any part therein. The parties were occupied in the election from two and a half to three minutes; and immediately thereafter, the secretary gathered up his books, and with those who participated in the election, departed the room. It appears from the minutes of the secretary entered in the journal of proceedings kept by him, that there were three thousand shares voted, and that Antonio Sitaro, Dominico Gargaro and Henrietti Pettineli, each received all the votes thus cast. The evidence further shows that a certificate representing fifteen shares originally issued to Antonio Pitagna and included in the fifteen hundred shares which he exhibited and placed upon the president's table, had been by him previously indorsed and given to a friend in San Francisco; but the transfer thereof had not been entered upon the books of the company, and the certificate had been returned to him prior to the meeting. It is claimed for respondents, that because the fifteen shares had been thus transferred, Pitagna was not authorized to represent the same, and consequently there were but five thousand nine hundred and eighty-five shares which could be represented at the election; and Antonio Sitaro, Dominico Gargaro and Henrietti Pettineli, each having received three thousand votes, and the votes thus received being a majority of the shares which those present were authorized to represent, were, therefore, duly elected to succeed the original board of trustees. We are unable to perceive any valid objection to the right of Pitagna to represent and vote the stock referred to. The certificate was issued to him, was then in his possession, and no transfer thereof had been entered upon the books of the corporation; and so far as appeared therefrom, he was the owner of the stock. True, the statute provides that shares of stock "may be transferred by indorsement and delivery of the certificate thereof;" but it further declares that "such transfer shall not be valid except between the parties thereto, until the same shall have been so entered upon the books of the corporation as to show the names of the parties by and to

whom transferred, the number or designation of the shares, and the date of the transfer." (Stats. 1864–5, p. 361, Sec. 9.)  In view of this statute, we think the right of Pitagna to vote the stock in question is evident.  The stock not having been transferred upon the transfer book, the private agreement or understanding between him and his friend was a matter between themselves, with which neither the corporation nor its stockholders have any concern.  (7 Cow. 402; 19 Wend. 37; *Bercich* v. *Marye,* 9 Nev. 316.) But irrespective of any question as to the right of Antonio Pitagna to represent or vote the fifteen shares of stock referred to, it is clear that the election was invalid and cannot be supported upon the facts here stated.  The statute provides: "If it shall happen at any time that an election of trustees shall not be had on the day designated by the by-laws of the company, the corporation shall not for that reason be dissolved; but it shall be lawful, on any other day, to hold an election for trustees, in such manner as shall be provided for in the by-laws of the company; and all acts of the trustees shall be valid and binding on the company until their successors shall be elected." (2 Comp. L. 3394.)  There is no provision in the by-laws of the Roman Capital Gold and Silver Mining Company authorizing the president to convene a meeting of its stockholders for any purpose; but on the contrary, by article 4, the power is expressly vested in the trustees, and necessarily requires the action of the board in order to convene a legal meeting. It is true, in this case, that all of the stockholders of the company assembled pursuant to the call of the president, and by mutual agreement and consent of all, they might have proceeded to the election of trustees; but it required the consent of all the stockholders to become binding upon any.  Here, then, was no such consent; and hence the attempted election by only a portion of the stockholders was illegal and void.  (Ang. & Ames on Corp., Secs. 488, 489, 491, 492, and 495; *The King* v. *Theodorick,* 8 East, 543; *The King* v. *Gaborian,* 11 East, 77; *Atlantic Delaine*

*Co.* v. *Mason et al.*, 5 R. I. 471–2; *Stow et al.* v. *Wyse*, 7 Conn. 214; 8 Met. 301.)

But if the meeting had been regularly called, the claim of respondents could not be sustained, because there was no organization or regularity in the proceeding. What occurred at the secretary's table, and which is relied upon by respondents, cannot in any sense be regarded as an election. Article 7 of the by-laws provides that "the president, when present, shall preside at all meetings of the company, and at the board of trustees; and in his absence a president pro tempore shall be chosen." * * * This provision of the by-laws was totally disregarded. The president, although present, did not preside at the election, nor was there a president pro tempore chosen in his stead; and no person who participated in the proceeding was authorized to receive the ballots, or to declare the result; hence, it follows that there was no legal election, and that the relator and Nicolo Soffia, together with the respondent Antonio Sitaro, constitute the legal board of trustees of the company, and are entitled to exercise the duties thereof.

It only remains to consider the proper judgment to be entered in the case.

It does not appear that Thomas Pettineli intruded himself into the office, or at any time claimed to exercise the office of trustee; therefore, the writ must be dismissed as to him.

The respondent Antonio Sitaro, being one of the trustees selected to manage the concerns of the company for the first six months after its organization, and not having been legally superseded, is entitled to exercise the same under that appointment. But in his answer, he claims to exercise the office only by virtue of the pretended election of April 6, 1874; therefore, judgment must be entered that the said Antonio Sitaro be ousted and altogether excluded from such office; but to be so entered as not to affect his right to exercise the office of trustee of said company by virtue of his original appointment.

It appearing that the respondent Dominico Gargaro is

unlawfully exercising the office of trustee of said company, judgment must be entered that he be ousted and altogether excluded from such office.

Judgment is so ordered.