St. Patrick's Alliance of America v. Byrne.

ST. PATRICK'S ALLIANCE OF AMERICA

*v.*

JOSEPH BYRNE et al.

[Filed October 30th, 1899.]

1. The laws of a beneficial society provided for suspension of subordinate branches for default in certain payments to the national executive council.—
*Held,* that since at the time of default there was no law by which such default

operated as a suspension, and the resolution of the council fixing the date when the default should occur was not retroactive, a defaulting branch could not be legally suspended without a trial on notice and an opportunity to be heard.

2. A corporation may be enjoined from using and doing business under the same name as another corporation, to the latter's injury, where the latter first adopted the name, and the use by the former would be apt to deceive the public.

3. Equity will not decide which of two sets of officers claiming to be the officers *de jure* of a beneficial society are entitled to the offices, unless some other equitable matter is involved in and requires the decision of such question.

4. The fact that one of the rival claimants to an office of a beneficial association holds funds which he refuses to pay over to one claiming to be his successor, does not give a court of equity jurisdiction to determine their rights to the office.

On application for injunction.

It appears that the complainant is a beneficial society with several organizations, the chief of which is the state council, and with a constitution which establishes the supreme law-making power for such an association in a general convention. The subordinate organization of the order are councils, in each state, district councils and branches. The national convention consists of delegates from the state and district councils and branches, each state council being entitled to three, and each district and each branch to one delegate. A state convention is composed of the president of each district convention, the president of each branch with one delegate elected from each district and each branch. The district council is composed of its officers and a post-president and two regularly deputed delegates from the branches comprising the district. The national convention each year elects a council whose duty it is to suspend any member, branch, district or state council, after charges have been made and proved, which may refuse compliance with the laws; and the suspension of a member shall suspend him from the benefit of the branch or district to which he belongs.

On February 6th the general law of the order required each branch to pay to the national executive council, within thirty

days from February 1st of each year, a sum to be fixed by the national convention, not to exceed twenty-five cents for every member on the roll on the 1st day of January of that year. This law was changed by the national convention held in 1899, but by another law the alteration did not go into effect until April, 1899. The national convention at this meeting imposed a *per capita* tax of ten cents a member, which became payable by the law already mentioned on March 4th, 1899. Branches Nos. 1 to 15, excepting Nos. 7, 12 and 13 of District No. 7, failed to pay this tax.

On July 27th, 1899, the national executive council passed a resolution that each of the said branches be notified that unless it paid the tax on or before August 15th, 1899, the council would suspend it. The resolution was sent to the recording secretary of each defaulting branch. Branches Nos. 1, 3, 10, 11, 14 and 15 failing to pay, were, by resolution, suspended, which resolution was served upon each branch personally or sent by mail to its president.

It is charged that the suspension of these branches disqualified each member of such branch from holding an office in the district convention or council. Among the officers of District Council No. 7, at the time of the suspension, was Brady, of Branch No. 15; William and John D'Arcy, Burns and Harwig, of Branch No. 1, and Mitchell and James Byrne, of Branch No. 10. This left ten unsuspended members out of the seventeen. Acting under color of district law No. 8, six of these ten made a requisition for a special meeting of the district council, which meeting may be called by a majority of the officers. The council thus organized proceeded to fill the places of suspended members by the election of new officers.

It is charged that the suspended members still claim to be officers of District No. 7; that Joseph Byrne pretends to be acting president, and Thomas P. Burns claims to be recording secretary, and William S. D'Arcy pretends to be treasurer of said district.

It is charged that these parties are proclaiming themselves to be officers of and are exercising the functions of officers of this

district; that they are using the name "District No. 7, St. Patrick's Alliance of America," which, they claim, is free from the supervision of the complainant; that they are inducing members of the unsuspended branches to become admitted to said suspended branches, and that such members have been deceived into joining the latter and so have lost the mortuary benefits; that Burns has refused to deliver up the seal to his successor and is using it to stamp his pretended official correspondence.    It is charged that William S. D'Arcy, treasurer, holds between seventy and one hundred dollars belonging to the district, which he fails to turn over to his successor after due notice to do so.

The answering affidavits deny that the treasurer has any fund belonging to District No. 7, and also deny that the defendants are setting up a spurious District No. 7, as an independent organization.    They deny that the defendants were suspended with the branches and their places were legally filled.    They set out that the constitution of the society was illegally changed by the national convention, and that the national council are organizing new branches from which a class of persons are illegally excluded, and that the money which would be paid to the national council would be misapplied by its expenditure in paying the expenses incurred in organizing such new branches.

*Mr. William M. Jamieson,* for the complainant.

*Mr. James J. Cahill,* for the defendants.

REED, V. C.

The bill, as already observed, charges that the several branches failed to pay the *per capita* tax which became due on March 4th, 1899, upon which failure each branch was notified that unless such tax was paid on or before August 15th, the council would suspend it; that upon failure to pay within the period the branches were, by resolution of the national council, suspended and were notified of such suspension.

The general laws, previous to 1899, said nothing about the

suspension of a branch upon its failure to pay the tax imposed. The laws adopted by the national convention, in 1899, provided that the branch should pay such a tax within sixty days from March 1st or stand suspended. It is charged in the bill that this law did not go into effect until April of that year.

If this is so, it was not operative upon the *per capita* tax which became due on March 4th previous. As the law stood on March 4th, when the several branches defaulted, there was no law which made such default operate as a suspension. The failure to pay was a violation of the law of the order, for which the national council, by-law No. 16, had authority to suspend the offending branch. This law, however, imposed the duty on the national council to suspend from the order,

"after charges have been made and proved, any member, branch, district or state council which may refuse compliance with the laws of the national convention."

This law contemplates a trial upon charges and evidence with notice to the defending member or branch. There appears to have been no such charges preferred, nor trial had, of any of the branches who received notification of suspension.

Whether the law passed in the convention of 1899 was self-executing, and only required as a condition precedent to suspension the existence of the fact of non-payment of the tax, and its subsequent notice of suspension, is a question upon which the authorities differ. But if self-executing, I do not see how it can affect these assessments. The annual tax for the year matured on March 4th. No new tax became due in that year, and the law which took effect on the 1st of next April was not retroactive.

The suspension clause had reference to the *per capita* tax payable in the future. The law did not extend the time of payment of the tax which had already matured, so that it became payable on May 1st; nor did it retroact, so that a previous default, *ipso facto*, suspended a branch. Therefore, if it be conceded that the suspension of a branch would have rendered its members

ineligible to hold any offices in the district council, the case against the defendants fails.

But if it be true that the branches were legally suspended, how does the case stand? The complainant says that these officers, who were members of the suspended branches and whose places in the district council were filled by the remaining officers of that body, have set up an independent and spurious District No. 7; that they are using the name of "St. Patrick's Alliance of America," and are, by the use of such name, depleting the membership of the old district. Now, it is undoubtedly the prerogative of a court of equity to enjoin a corporation that is using the name of another corporation to the injury of the latter. The name may stand as a trade-mark, which a court of equity will protect against infringement. *1 Beach Corp.* § *374; 10 Cent. L. J. 461; Holmes* v. *Holmes, 37 Conn. 278; Brooklyn* v. *Masury, 25 Barb. 416; Turton* v. *Turton, 7 Ry. & Corp. L. J. 64.*

But the defendant denies that they are operating as a new corporation. Their claim is that the branches of which they are members are loyal to the old constitution, and that those branches which have recognized an alteration in that instrument, which these defendants allege to be illegal, are the spurious branches. Or, to put it in another shape, it is a quarrel as to whether these defendants or the newly-appointed officers are the real officers of District No. 7.

Now, it is entirely settled that a court of equity will not decide which of two bodies of men represent a corporation unless some other equitable matter becomes entangled with this question.

But it is said that the old treasurer holds funds of the district which he refuses to pay over to his appointed successor, and that this gives jurisdiction to decide the validity of his official character.

But the recovery of this money would be a subject not of equitable but of a legal remedy. Besides this answer, it is denied by the affidavits of the defendants that the said treasurer holds any money belonging to District No. 7.

Therefore, without considering the merits of the contest between these officers, I am constrained to the conclusion that there is no ground in the bill and affidavits for a preliminary injunction.