## No. 8933.

### GRANT ET AL. *v.* ELDER ET AL.

1. QUO WARRANTO—*Statute Construed.* The phrase "any franchise" in sec. 320 of the Code includes the powers and rights conferred upon a private corporation, and *quo warranto* lies to try the right of those lawfully elected directors of a private corporation and wrongfully prevented from acting.

2. EQUITY—*Jurisdiction.* Equity will not entertain a bill to examine the title of those claiming to be directors of a private corporation, unless there is some paramount equity involved, to which such title is merly incidental.

3. CORPORATIONS—*Election of Directors—Special Meeting.—Statute Construed.* Where the annual meeting of a private corporation for the election of directors is not held upon the day appointed by the by-laws, a special meeting for the election can be called only by the directors, or by two stockholders.˙ (Rev. Stat. sec 867.) An election at a special meeting called by the president, under. express authority of the by-laws, is void, unless every stock holder is present and consents to proceed to an election.

4. EQUITY—*Laches.* Bill to contest the election of directors of a mining corporation. The election was held in December, 1913. The action was instituted on December 20, 1913. It was not tried until January, 1916,—the delay being attributable to the plaintiffs. Considering the character of the corporate property, involving speculative values, the plaintiff's dilatory conduct was condemned as inexcusable laches.

*Error to Denver District Court, Hon. Charles C. ˙Butler, Judge.*

Mr. JOHN A. EWING, Mr. JOHN W. SLEEPER and Mr. FRAZER ARNOLD, for plaintiffs in error.

Mr. GEORGE R. ELDER and Mr. ROBERT DULL ELDER, for defendants in error.

Mr. Justice Garrigues delivered the opinion of the court. *Statement.*

THIS suit, brought in equity by injunction, is to try the validity of a corporate election for directors of the Adams Mining Company, a domestic corporation. At the purported annual stockholders' meeting to elect directors,

held in Denver, December 18, 1913, the stockholders present divided into hostile camps known as the Elder and Sylvester factions, and each chose or attempted to choose a set of directors. Prior to this meeting Sylvester and his associates were in control for a number of years, and elected the board largely by obtaining and voting proxies at the annual stockholders' meetings, and they claimed the right at this meeting to vote by proxy some 99,000 shares. The Elder faction claimed more recent proxies for some of the same shares, revoking a sufficient number of Sylvester proxies, which, in connection with their personal holdings, gave them the right to vote 78,136 shares, or a controlling interest sufficient to elect the board; the capital stock being 150,000 shares. This suit is the outgrowth of what occurred at this meeting.

The by-laws provide that the annual stockholders' meeting to choose directors shall be held each year at the company's general office in Colorado, on the second Wednesday of December, which in 1913 was December 10. The annual meeting was not called for or held at that time. Prior to, and on the day fixed by the by-laws, when the meeting should have been held, the directors were Sylvester, Grant, Broemelsick, Ewing, Lauderman, Waters and Rule. Sylvester was president, and Rule was secretary. The company maintained general offices at suite No. 1030-35 First National Bank Building, Denver. Sylvester, as president, called the annual stockholders' meeting in 1913, to be held at this Denver office on Thursday, December 18, for the election of directors. When Elder and his following arrived at the pointed hour, and place of meeting fixed by the notice, Sylvester and his adherents were already there, and Sylvester, as president, at once called the meeting to order. The Elder faction claimed the right, on account of their proxies, to organize the meeting, which the opposition disputed. In attempting to organize, each faction nominated a temporary chairman, and the stockholders present voted, or attempted to vote, all the proxies they claimed, for one or the other of the nominees, and each

side contended that its chairman was elected. The president, acting as the presiding officer, declared the nominee of the Sylvester faction elected, and he took the chair, and presided over the meeting held at this office. As soon as a secretary was chosen, the Elder faction moved that three certain designated persons be chosen as a committee on proxies, which motion the chair declared premature and out of order. After the secretary read the president's call for the meeting, the Sylvester faction moved that the chair appoint a committee on credentials. The opposition moved a substitute that the three designated persons act as such committee. Both sides voted on this motion as far as they could, all the proxies they had, and the chairman declared the substituted motion lost, the original motion carried, and appointed all the committee from the Sylvester faction. The Elder faction appeared before this committee with the proxies they claimed. The committee found against them, and brought in a report seating the Sylvester proxies, and on motion the chairman declared the report adopted. The Elder faction then ceased trying to organize the meeting at this place, and moved an adjournment to 621 E. & C. Building, Denver, giving as the reason that their proxies were not seated. This motion was made, seconded, put and voted for, and declared carried, by the Elder faction, one of their number claiming to act as temporary chairman for that purpose. They immediately retired to 621 E. & C. Building. The stockholders remaining chose the old or 1912 board of directors, who re-elected the old officers. No change being made in the board or in the officers of the company.

The Elder faction organized immediately at the E. & C. building, and chose directors, which elected officers. This meeting adjourned at 3 o'clock p. m., and within thirty minutes this suit was begun by service of summons on Grant, Sylvester and Ewing, the others being non-residents of the state and not present, were not served, though named as defendants. Complaint was filed December 20, 1913. February 24, 1914, plaintiffs confessed a demurrer,

and filed an amended complaint. June 1, 1914, the amended complaint was stricken from the files on defendants' motion. June 19, 1914, the second amended complaint was stricken from the files on defendants' motion. February 3, 1915, permission was granted plaintiffs to refile their original complaint, to which a general demurrer was at first sustained, and then overruled.

The action as originally begun was to obtain injunctions against numerous and various defendants, but when the issues were finally settled and the case tried, all plaintiffs were dismissed except Elder, Allen, Mann and Malburn, as well as all defendants except Grant, Sylvester and Ewing. The cause was tried as an action in equity to determine whether plaintiffs had been chosen directors, and were prevented from exercising the right by the defendants, who claimed to be the directors. No injunction was asked for or granted, and all other issues were dismissed.

All the affairs, effects, business, management, property, books, and every corporate right and function of every kind and description, relating to the franchises, affairs and property of the corporation, remained wholly in the hands, control and possession of the Sylvester board, as theretofore, and it paid all taxes, and made all the annual reports required by law, and were generally recognized as representing the corporation, and as being in control and having the management of its effects and affairs. The Elder board made no attempt to interfere with such management and control, or to exercise any of the functions or franchises of the corporation. The president and secretary chosen by the Sylvester board called the 1914 annual stockholders' meeting at the company's office in Denver. The president and secretary chosen by the Elder board called a meeting to be held in Leadville; no meeting was organized there, however, for lack of a quorum. A large majority of the stockholders, either in person or by proxy, attended the meeting held in the company's general office in Denver and chose a board of directors, who remained in control

until the annual meeting in 1915. In 1915, practically the same process was repeated; that is, the president and secretary who were elected by the Elder board chosen in 1913 called the 1915 annual meeting at Leadville, but nothing was done for lack of a quorum. The president and secretary elected by the board chosen at Denver in 1914 called the 1915 annual stockholders' meeting at the company's office in Denver, at which a large majority of the stockholders were represented, either in person or by proxy, and again chose directors for the ensuing year. Before the trial of the case in January, 1916, annual stockholders' meetings had been duly called for 1914 and 1915 by the *de facto* officers at least, at which a large majority of the stockholders, either in person or by proxy, attended for that purpose, and chose directors. There is no dispute about the Sylvester adherents being largely in the ascendency and control in 1914 and 1915, and that the Elder faction were unable to obtain a quorum or hold a meeting in either of those years. The only question raised concerning the regularity of the stated or annual stockholder's meetings in 1914 and 1915 is, it is claimed, that they were not called by the authorized persons, namely, by the president and secretary elected by the Elder board chosen in 1913, or, stated another way, that they were not called by the president and secretary of the company. Defendants in error do not claim that they were re-elected or chosen directors in 1914 or 1915, or that they organized either of those meetings. They claim they were chosen directors at the annual stockholders' meeting held December 18, 1913, at the E. & C. Building, and there being no subsequent valid election, they hold over and are still directors. The court decided the dispute regarding the proxies in favor of the Elder faction, and found that at the stockholders' meeting called by the president for December 18, 1913, the Elder set of directors were duly chosen; that no directors have since been chosen to succeed them; that the survivors of the seven then chosen are still the lawful directors, with the exclusive right to direct the

management and affairs of the company until their successors are elected and qualified; that Elder was duly elected president, and Malburn secretary, by this board; that the Sylvester board have not been directors since December 18, 1913, and that the officers elected by it are not the officers of the company; that the annual stockholders' meetings called for 1914 and 1915, and held in Denver, were unauthorized, illegal and void, and entered a decree accordingly.

*Opinion.*

1. This action is to contest the election of a board of directors in a private corporation.

The first question presented is whether our *quo warranto* statute affords an appropriate remedy in such a case. If it does, it is exclusive of all other remedies. The Code, section 320, R. S. 1908, provides:

"An action may be brought by the district attorney in the name of the people of this state, upon his own information, or upon the relation and complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise within his district in the state, and it shall be the duty of the district attorney to bring the action whenever he has reason to believe that any such office or franchise has been usurped, intruded into or unlawfully held, or exercised by any person, or when he is directed to do so by the Governor; and in case such district attorney shall neglect or refuse to bring such action upon the complaint of a private party, such action may be brought by such private party, upon his own relation, in the name of the people of the state."

It is claimed by defendants in error that the *quo warranto* statute does not apply, and there being no specific statute to try a contested election over the board of directors of a private corporation, that equity affords a proper remedy. This claim is based upon the alleged ground that they have no other plain, speedy and adequate remedy. If

they have, then there is nothing upon which to base an equitable action.

Defendants below, plaintiffs in error here, were directors prior to December 18, 1913, and claimed on the trial that there was no election that year and that they were hold-over directors. Plaintiffs below, defendants in error, claimed they were elected directors December 18, 1913, and that defendants thereafter, though they had no lawful claim to the directorship, were wrongfully claiming to be direc-. tors, and acting as such against the rights of plaintiffs, who were the lawful directors.

We have no statute giving an equitable action or any specific proceeding to try the validity of a contested corporate election, except it be *quo warranto*. This section, omitting parts immaterial to this controversy, provides that the district attorney, in the name of the people, upon his own information, or upon the relation and complaint of a private party, may bring an action against any person who usurps, intrudes into, or unlawfully holds or exercises "any franchise"; and if the district attorney neglects or refuses so to do, such action may be brought in the name of the people by a private party on his own relation. Are the words, "any franchise," used in the statute, broad enough to include persons who, unlawfully and without right, perform or attempt to perform the functions of an existing corporation, by intruding themselves into and exercising the rights of the board of directors? We have examined many authorities and believe that *quo warranto* brought in the name of the people has generally been regarded a proper remedy to try the right of those who, without authority, claim to be directors and unlawfully attempt to perform the functions of a private corporation, where no other issue is involved, except in states where some special provision or procedure has been enacted for the express purpose of trying the validity of such corporate elections. Our legislature has made no such provision unless it be *quo warranto*.

No doubt the words, "any public office, civil or military," used in the act, do not apply to the officers of a private corporation, and those words are not applicable to this case. The matter herein involved is not those words, but whether the words, "any franchise," as used therein, includes the functions of a private corporation.

In *Londoner v. People*, 15 Colo. 247, 25 Pac. 183, it is said:

"A franchise with us has been defined as a particular privilege conferred upon individuals by grant from the government. Franchises are usually conferred upon corporations for the purpose of enabling them to do certain things. Franchises are vested in the corporate entity."

The franchises in the case at bar consisted in the right to be, and the privilege to conduct business, granted by the legislature, vested in the corporate entity, which right and privilege could be exercised only by a board of directors lawfully chosen by the stockholders. If not lawfully chosen, they were wrongfully exercising the right. Are the words, "any franchise," mentioned in the *quo warranto* act, broad enough to include the usurping, intruding into or exercising the powers and rights granted the corporations?

Persons pretending or claiming to be directors who are not, but who nevertheless intrude themselves into and usurp the functions of the corporation, and wrongfully exercise the powers of the board in the name of the corporation against the rights of those who are the lawful board, certainly usurp the functions of the corporation. Such intrusion into the board is an unlawful exercise of the corporate franchise already granted, by persons who are not directors, and is an usurpation of the franchise itself. Such grant, rights and privileges conferred upon a private corporation are franchises which are violated, usurped and intruded into and wrongfully exercised, whenever persons who are not directors usurp, intrude into and undertake to act as such. It is the wrongful intrusion into the board upon a false and pretended claim, and exercising the function of the corporation that constitutes the usurpation of

and wrongful exercise of the franchise. The intrusion into the board upon the false claim, and exercising the franchise of the corporation, is a usurpation and a wrongful exercise of the franchise.

Where the validity of a corporate election is in dispute, and it involves nothing but the title to the board of directors, we think, in the absence of a statute created specially for the specific purpose of trying the validity of contested corporate elections, that an information in the nature of *quo warranto* is an appropriate remedy, and that private individuals elected, but wrongfully prevented from acting upon the board by the intruders, may apply to the district attorney, and, if he fails to act, may bring an action themselves as relators in the name of the people to oust the usurpers from exercising the franchises and to install the relators.

We know we have held that where the purpose of an application in *quo warranto* is to seize into the hands of the state the franchise of the corporation, or procure its dissolution, that the application will not be entertained on behalf of a private citizen who has no other interest in the controversy than all other citizens. *People ex rel. U. P. Co. v. Colo. Eastern Ry. Co.,* 8 Colo. App. 301, 46 Pac. 219; *State R. R. Com. v. People,* 44 Colo. 345, 98 Pac. 7, 22 L. R. A. (N. S.) 810; *State v. A., T. & S. F. Ry. Co.,* 176 Mo. 687, 75 S. W. 776, 63 L. R. A. 761. But this action does not attack the existence of the corporation, or its franchises. This is where, according to the allegations of the complaint, the Sylvester board has usurped, intruded into and is exercising franchises already granted, the right to exercise which belongs to the Elder board.

The grant, rights, privileges and power to do business of a private corporation are its franchises, which are violated, usurped, intruded into and wrongfully exercised whenever persons who are not directors intrude themselves into and exercise such powers in the name of the corporation, and this is the usurpation of a franchise. *Quo warranto* in such a case affords a remedy. *People v. Lockhard,* 26 Colo.

App. 439, 449, 143 Pac. 273; *Hayes v. Burns,* 25 App. D. C. 242, 4 Ann. Cas. 707; *Perry v. Tuskaloosa Co.,* 93 Ala. 364, 9 South. 217; *Elliott v. Sibley,* 101 Ala. 344, 348, 13 South. 500; *Owen v. Whitaker,* 20 N. J. Eq. 122; *Kean v. Union Water Co.,* 52 N. J. Eq. 813, 820, 31 Atl. 282, 46 Am. St. Rep. 538; *St. Patrick, etc., v. Byrne,* 59 N. J. Eq. 26, 44 Atl. 716; *Schilstra v. Van Den Heuvel,* 82 N. J. Eq. 612, 90 Atl. 1056; *Carmel Co. v. Small,* 150 Ind. 427, 47 N. E. 11, 50 N. E. 476; *Hagner v. Heyberger,* 7 Watts & S. 104, 42 Am. Dec. 220-224; *Jenkins v. Baxter,* 160 Pa. 199, 28 Atl. 682; *Deal v. Miller,* 245 Pa. 1, 90 Atl. 1070; *Hullman v. Honcomp,* 5 Ohio St. 237; *New Eng. Co. v. Phillips,* 141 Mass. 535, 6 N. E. 534; *People v. Albany R. Co.,* 57 N. Y. 161; *Hartt v. Harvey,* 32 Barb. (N. Y.) 55; *Sherman v. Clark,* 4 Nev. 138, 97 Am. Dec. 516; Cook on Corporations, §§ 571-618; Cook on Corporations, p. 1687, note 1; 10 Cyc. 749; High on Injunctions, vol. 2 (4th Ed.) § 1235; High on Ext. Leg. Rem., §§ 619, 653, 664; Spelling on Inj. & Ext. Rem., vol. 2 (2d Ed.), § 1773.

In *Hayes v. Burns,* supra, it is said:

"It is the general rule that, in the absence of a statutory provision to that effect, a bill in equity is not the proper remedy to determine the question of title to an office in a private corporation where that is the main question involved."

In *Elliott v. Sibley,* supra, it is said:

"A court of equity will not primarily take jurisdiction to determine the legality of an election of directors, or to remove a director who is in possession of the office. The court will inquire into the regularity of the election, or the right of the person to the office, only when the question arises incidentally and collaterally in a suit of which the court has rightful jurisdiction, and the grant of relief depends upon its decision."

In Cook on Corporations, Sec. 618, the author says:

"A court of equity has no inherent power or jurisdiction to entertain a bill for the purpose of reviewing a corporate

election and ousting the parties who claim to have been elected."

In *Deal v. Miller,* 245 Pa. 1, 90 Atl. 1070, it is said:

"The validity of an election of directors of a corporation can not be adjudicated on a bill in equity for an injunction and a new election, *quo warranto* being the proper remedy in such case."

"It may be observed that in some of the states of the Union, by statutory enactment, courts of equity are given jurisdiction to determine the legality of the election of corporate officers, notably in the states of New York and New Jersey. We have not, however, been able to find a single case wherein the validity of an election of corporate officers can be adjudicated on a bill in equity, except where such statutory provision exists."

In *Schilstra v. Van Den Heuvel,* 82 N. J. Eq. 612, 90 Atl. 1056, it is said:

"Under the system of jurisprudence which prevails in this state, the only tribunal in which the right to an office can be judicially determined is the Supreme Court, and the only method by which it can be put in issue is by proceedings in the nature of a *quo warranto.* And this is true not only with relation to state and municipal offices, but also those of private corporations."

In note 1, p. 1687, Sec. 618, of Cook on Corporations (6th ed.), it is said:

"The title of de facto (corporation) officers to their office can not be tested by an injunction or bill in equity. Quo warranto or a proceeding under the statute is necessary."

In *New England Co. v. Phillips,* 141 Mass. 535-545, 6 N. E. 534, it is said, speaking of an injunction to restrain persons from acting as directors who had been illegally elected:

"This course is open to the objection, that suits to remove or to institute corporation officers do not belong to the original jurisdiction of chancery, and that the right to be such officer can not, in general and in the absence of special legislation affording this remedy, be tested by means of an injunction."

In High on Injunctions, Vol. 2 (4th Ed.), Sec. 1235, the author says:

"It is also to be observed that courts of equity do not entertain jurisdiction over corporate elections for the purpose of determining questions pertaining to the right or title to corporate offices, since such questions are properly cognizable only in courts of law, the appropriate remedy being by proceedings at law in the nature of a quo warranto. Nor is the fact that relief is claimed upon the ground of fraud sufficient to warrant a departure from the rule, or to justify a court of equity, in such case, in granting relief by injunction. Where, however, the question of the right or title to corporate office arises as a mere incident to the determination of a case involving property rights of which equity has jurisdiction, the rule forbidding injunctive relief does not apply. Thus, where defendants, claiming to be the directors of a railroad corporation, had forcibly seized possession of the property of the road and were using it in such a way as to cause irreparable injury to property rights, it was held that equity might properly interfere for the protection of such rights, and the fact that the court was compelled incidentally to determine the question as to the validity of the election of the directors did not deprive the court of its jurisdiction. But the decision in such case is merely for the purpose of the pending proceeding, and it does not determine the ultimate right to the office, or vacate it, if the claimant is already in possession. Indeed, the only ground upon which the jurisdiction of equity in restraint of corporate elections can be properly based is the protection of the property rights of shareholders, and it is believed that the limit to the exercise of the jurisdiction is found in such measure of preventive relief as will prevent injury to those property rights, without extending it to questions of title to corporate offices, the determination of which is to be sought in a legal rather than in an equitable forum."

In High on Ext. Leg. Rem., Sec. 653, it is said:

"Tested by these principles, an intrusion into an office

of a merely private corporation may, in this country, be corrected by information with the same propriety as in cases of public or municipal corporations, since there is in both cases an unfounded claim to the exercise of a corporate franchise, amounting to a usurpation of the privilege granted by the state."

Mr. High also says at section 664:

"The doctrine may now be regarded as well established, that an information in the nature of a quo warranto is the appropriate remedy against persons usurping the franchise or privileges of a board of trustees * * * of an incorporated church association."

Mr. Spelling, at sec. 1773 of his work, says:

"For while the public may not have any interest in the question whether A or B shall perform the duties and enjoy the emoluments of a public office, still it has an interest that neither A nor B shall usurp a public office. And the same reasoning applies where title to an office in a private corporation is in dispute, since such controversy usually involves the further question of whether a corporate franchise has or has not been usurped."

In High on Ext. Leg. Rem., Sec. 619, it is said:

"When the right to an office or franchise is the sole point in controversy, the specific legal remedy afforded by proceedings in quo warranto is held to oust all equitable jurisdiction of the case. Thus, the legality of the election of trustees of an incorporated association, and their consequent right to exercise the functions pertaining to their office, and to conduct the affairs of the corporation, will not be determined by bill in chancery, such a case being regarded as appropriately falling within the jurisdiction of the common law courts by proceedings in *quo warranto*. And since this remedy is applicable the moment an office or franchise is usurped, an injunction will not lie to prevent the usurpation, even though the respondent has not yet entered upon the office or assumed to exercise its functions. In such case the party aggrieved should wait until

an actual usurpation has occurred, and then seek his remedy in quo warranto."

We are aware that courts of equity sometimes examine into the title of a board of directors in a private corporation where there is some paramount equity to which such title is merely incidental, but such is not this case.

We are therefore of the opinion that suits in equity by injunction to restrain persons from acting as directors of a private corporation who have been irregularly elected are not proper, in the absence of special legislation, and that *quo warranto* affords an appropriate remedy in this case, and that this equitable action should be dismissed.

2. If, however, the case is considered upon its merits as tried, the question which first arises is whether any valid stockholders' meeting to elect directors was held in 1913. If not, then the directors chosen at the stated meeting in 1912 would hold over. The meeting at the First National Bank Building re-elected this old board of 1912. So, whether the rights of plaintiffs in error are based upon the meeting of 1913 or whether they claim as hold-over directors makes no difference. If they were not legally chosen in 1913, they held over and constituted the board anyhow, regardless of this meeting, unless the board chosen by the Elder faction at the E. & C. Building constituted the lawful board. This makes it necessary to determine whether defendants in error were chosen at a lawful meeting.

The lower court remarked at the inception of the trial: "I see your contention is, there was no proper meeting, and if there was no proper meeting, you are at least hold-over directors." Plaintiffs contended throughout the trial below that they were chosen directors at the 1913 meeting. Defendants contended that no valid meeting had been held, and that they were hold-over directors. The issue as finally settled and tried involved nothing but the legality of the 1913 meeting, which depended upon the regularity of the call. Plaintiffs alleged they were chosen at this meeting and clearly assumed the burden of proof. If the stock-

holders' meeting in 1913 for the election of directors was not duly called, then plaintiffs have no claim to the directorship, and the directors chosen in 1912 would hold over.

We will now consider the validity of the call for the 1913 meeting. It was a deferred stockholders' meeting to choose directors, called by the president, the notice of which reads:

"Notice is hereby given that the annual meeting of the stockholders of The Adams Mining Company is called by the undersigned, president, pursuant to the by-laws in such case made and provided, to be held at the office of the company, suite No. 1030-35, First National Bank Building, Denver, Colorado, on Thursday, the 18th day of December, 1913, at 10:00 o'clock a. m., for the purpose of electing a board of seven directors for the ensuing year."

The by-laws, authorizing the president to call the meeting, provided:

"There shall be an annual meeting of the stockholders of this company held on the second Wednesday of December each year, at the principal office of the company, in the State of Colorado, at which meeting not less than seven directors shall be elected by ballot, who shall hold office for one year, or until their successors shall be elected. In case of failure of the board of directors giving notice at the proper time of the place to hold said annual meeting, the said meeting may be called by the president in such place and at such time as he may determine, in accordance with the provisions of the charter and by-laws of the company and the laws of the State of Colorado."

The statute provides that the corporate powers shall be exercised by a board of directors, who shall be annually elected by the stockholders, at such time and place as shall be directed by the by-laws.

In regard to calling a stockholders' meeting like this to choose directors at a time other than that designated in the by-laws, the statute provides: In case it should happen at any time that an election of directors shall not be held on the day designated by the by-laws, when it should be held, such directors may be chosen at any subsequent meeting

of the stockholders. Said meeting to be called by the directors or by any two stockholders.

The day designated by the by-laws for holding the annual stockholders' meeting was the second Wednesday of December in each year, which in 1913 was December 10th. No meeting was called for or held on that day, it passed without a meeting, and the event happened mentioned in the statute, namely, directors were not chosen on the day designated by the by-laws. The meeting attempted to be held was called for by the president on the third Thursday of December, being December 18, instead of December 10. The statute provides such meeting shall be called by the directors or by any two stockholders. This is conceded, but it is claimed the meeting was called by the president as provided by the by-laws. That is immaterial. Where there is a conflict between the by-laws and the statute as to who shall make the call, the statute is controlling. The time designated by the by-laws for holding the annual stockholders' meeting having passed, unless the meeting was called by the persons designated by the statute, it had no legal capacity to enter upon the election of directors. The statute vests the power to make the call for such a meeting to elect directors in the board of directors or in any two stockholders, and a legal meeting could be convened only by following the statute, unless every share of stock was present and consented to the meeting. The complaint alleges that 10,000 shares of stock did not participate in the meeting, and the evidence shows that some 20,000 shares of stock were not represented and did not participate. The legality of the meeting and the right to choose directors depended upon the legitimacy of the call. True, the by-laws, upon which the president acted, gave him power to call such a meeting, but the statute vested that power in the board of directors or any two stockholders. The call was not valid or binding upon the corporation unless it was given by the persons authorized by statute, and no lawful meeting could be had that was not based upon a legitimate call, unless all the stock was present and con-

sented to the meeting. *State v. Pettineli,* 10 Nev. 141-145; *San Buenaventura Mfg. Co. v. Vassault,* 50 Cal. 534-537; *Charter Gas Eng. Co. v. Charter,* 47 Ill. App. 36-53; *Hill v. Railroad,* 143 N. C. 539, 55 S. E. 854, 9 L. R. A. (N. S.) 606; *Stow v. Wyse,* 7 Conn. 214, 18 Am. Dec. 99; *In re Empire S. S. Lodge,* 53 Misc. Rep. 344, 103 N. Y. Supp. 465-468; *U. S. ex rel. Edwards v. McKelden,* 11 D. C. 162-169; *Reilly v. Oglebay,* 25 W. Va. 36, 39, 40; *Cassell v. L..H. & P. Co.,* 9 S. W. 502, 701, 10 Ky. Law Rep. 486; *Riggs v. Polk Co.,* 51 Or. 509-516, 95 Pac. 5; *In re St. Helen Mill Co.,* 3·Sawy. 88, Fed. Cas. No. 12222; *Kulinski v. Dambrowski,* 29 Wis. 109-114; Angel & Ames on Corps., §§ 491, 495; McCrary on Elections (4th Ed.), § 654; 10 Cyc. 324; 26 Am. & En. Ency. of Law (2d Ed.), pp. 987-991.

In *State v. Pettineli,* supra, it is said:

"This is an information in the nature of a quo warranto originally brought in this court to determine the title of respondents to the office of trustees of the Roman Capital Gold and Silver Mining Company.   *   *   *

The time designated by the by-laws of the company for the election of trustees to succeed those thus selected passed without an election being held, and there was no attempt to convene the stockholders for that purpose until March 31, 1874, when the relator, as·president of the company, caused a notice to be published in the Virginia Evening Chronicle, which stated that, 'A meeting of the stockholders   *   *   *   would be held at Room 21, Douglass Building, Virginia, at the hour of 7 o'clock p. m., on Monday, April 6, 1874, for the purpose of electing officers of company to serve for the ensuing year.'   *   *   *

The statute provides: 'If it shall. happen at any time that an election of trustees shall not be had on the day designated by the by-laws,   *   *   *   it shall be lawful, on any other day, to hold an election for trustees, in such manner as shall be provided for in the by-laws of the company.   *   *   *   There is no provision in the by-laws of the company authorizing the president to convene a meeting of its stockholders·for any purpose; but, on the contrary, by

Article 4, the power is expressly vested in the trustees, and necessarily requires the action of the board in order to convene a legal meeting. It is true, in this case, that all of the stockholders of the company assembled pursuant to the call of the president, and by mutual agreement and consent of all, they might have proceeded to the election of trustees; but it required the consent of all the stockholders to become binding upon any. Here, then, was no such consent; and hence the attempted election by only a portion of the stockholders was illegal and void."

This case is directly in point. The Nevada statute provided that in the event the stated meeting was not held on the day designated by the by-laws, that it would be lawful on any other day to elect directors in such manner as provided by the by-laws. The by-laws vested such power in the directors. The meeting was not called by them, as provided by the by-laws, but was called by the president. Held, that in the absence of the consent of every share of stock, the meeting was illegal and void and not binding on any, because not legally called. In the case at bar, our statute vests the power to call such a deferred meeting in the directors, or in two stockholders, not in the president. It was called by the president, hence it required the consent of all the stock to become binding upon any, and without such consent was an illegal meeting, and had not power to elect directors. But, it is said, this case is different from the Nevada case, because the by-laws of the Adams Mining Company did provide that the president may make such a call. True, but that is immaterial. This part of the by-laws being in conflict with the statute, is of no effect, and the statute, not the by-laws, must be followed.

In *Charter Gas. Eng. Co. v. Charter,* supra, it is said:

"Every stockholder had a right to be present at that meeting, and it could not be legally held until after notice of the time and place had been given in an authentic and legal mode, unless all stockholders were present and consenting in person or by proxy."

In *Hill v. Railroad,* supra, it is said:

"Therefore has it always been conceded, as a just and indisputable rule in the law of corporations, that notice to each of the members of a corporation of the time and place of holding a meeting of the stockholders is absolutely essential to its validity. * * * The majority can act for the corporation, of which they constitute a part, only at a meeting which has been regularly called."

In *Stow v. Wyse,* supra, it is said:

"On the other hand, it is insisted that the meeting was illegal, and the acts done void. It is very clear that a meeting of the stockholders, constituted as this was, could do no acts binding on the company. Though a meeting regularly warned would be competent to do any act within their chartered powers, by a bare majority, yet if not thus warned, their act must be void."

*In re Empire Lodge,* 103 N. Y. S., at 469, 103 N. Y. Supp. 469, it is said:

"It is not a question here of who received a majority of the legal votes cast, but a question as to the legal right to hold any election at all."

In *U. S. ex rel. Edwards v. McKelden,* supra, it is said:

"It follows that the legislature relied wholly, therefore, upon the special notice as the necessary means of informing the corporators, and that a provision which requires the use of this means is mandatory. * * *

We hold, then, that the publication of the special notice in two newspapers for a period of two weeks is a condition upon which the validity of the annual meetings of this corporation depends. It appears that notice of meeting of January 20, 1879, was published for only ten days. That meeting, therefore, had no legal capacity to enter upon an election of managers, and the subsequent meetings, held upon adjournments from the original meeting, could not acquire capacity by those adjournments. If the corporators did not have proper notice of the original meeting, they did not have proper notice of its continuations. It appears,

then, that the relators have no title to the offices which they seek by this writ, and the writ must be quashed."

In *Cassell v. L. H. & P. Co.*, supra, it is said:

"The election attempted to be held under that call must therefore be regarded as illegal, and Cassell and his associates acquired no right in virtue thereof to the offices of president and directors of the company."

In *Riggs v. Polk Co.*, supra, it is said:

"It is in general essential to the validity of acts done at a special or called meeting of a corporation, that the call shall be made by the person or persons appointed by the governing statute to call such meetings, and notice must be given at the time and in the manner so prescribed."

*In re St. Helen Mill Co.*, supra, it is said:

"Indeed, the stockholders' meeting at which these directors were elected was illegal, being held without notice, and less than the whole amount of stock represented."

In Angell & Ames on Corporations (11th Ed.), Secs. 491, 495, it is said:

"The summons must be issued by order of some one who has authority to assemble the corporation; though the want of authority in such case may be waived by the presence and consent of all who have a right to vote."

"If the members be duly assembled, they may unanimously agree to waive the necessity of notice, and proceed to business; but if any one person having a right to vote is absent or refuses his consent, all extraordinary proceedings are illegal; and if the charter requires a special notice, it can not be dispensed with even by unanimous consent."

McCrary on Elections, at Sec. 654, says:

"Meetings of shareholders held for the purpose of electing officers of the corporation * * * must be called by persons having competent authority."

10th Cyc., at page 324, says:

"Notice must be given in statutory mode."

"The requisites of the notice may be enumerated as follows: (1) It must be issued by one who has authority to issue it."

In 26 Am. & Eng. Enc. of Law. p. 991, it is said:

"Statutes specifying who must give the notice must be complied with, and a notice by any one other than the authority specified by the statute will be insufficient."

3.   This was a stale case when tried.   A suit involving the directorate of a corporation having property rights of this character and magnitude should be tried with diligence, especially is this true of mining property involving speculative values.   The action was begun in December, 1913, and was tried in January, 1916.   In the meantime, two stockholders' meetings had been held affecting the policies to be pursued by the corporation and involving the interests of the stockholders.   The record discloses no reason for this delay not occasioned by plaintiffs themselves.   If they had properly brought the suit in the first instance, and diligently pressed it to trial, there is no reason why a conclusion should not have been reached before the annual stockholders' election in 1914.   The record impresses one that they had no desire to press the case to a speedy trial before the 1914 stockholders' meeting, and when the case finally came on for trial in June, 1915, they were unprepared for trial and asked for a continuance, and at their request the case went over to the September term, and they were not ready for trial until January, 1916.   This, under the circumstances of the case, considering the nature of the property and the interests affected, was not a diligent prosecution of the case.   Such a case should not only be brought with diligence, but it should be prosecuted with diligence.

In *Johnston v. Standard M. Co.,* 148 U. S. 360, 37 L. Ed. 480, 13 Sup. Ct. 585, at page 370, it is said:

"It has been frequently held that the mere institution of a suit does not of itself relieve a person from the charge of laches, and that if he fail in the diligent prosecution of the action, the consequences are the same as though no action had been begun."

Judgment reversed and cause remanded with directions

to the District Court to enter a judgment of dismissal.

Reversed and remanded.

Decision *en banc.*

Mr. Justice Hill, Mr. Justice Scott and Mr. Justice Teller dissent.

Mr. Justice Teller dissenting:

The majority opinion gives to chapter 27 of Mills Code, commonly known as the *quo warranto* statute, a construction so at variance with what I think it should be, that I deem it proper to state in some detail the grounds of my dissent.

The opinion cites authorities to show that *quo warranto* is the proper proceeding to test the right to the office of director of a private corporation, but ultimately determines the case on a construction of our statute, holding that one who assumes, without right, to act as a director usurps or unlawfully holds a franchise.

As to the authorities cited on the question of procedure, it is sufficient to say that they refer to statutory procedure, more than one-half of the states having statutes expressly providing for the testing of a right to office in a private corporation by *quo warranto,* or by some other statutory action.

Since, however, the opinion bases the reversal of the judgment on the ground that a franchise has been usurped, and not upon the ground that the right to an office, *eo nomine,* is under our statute to be determined by *quo warranto,* I do not think it necessary to pursue that branch of the question.

The majority opinion states, in effect, that the plaintiffs in the suit consider that a question as to the exercise of a franchise is involved, when it says:

"This is where, according to the allegations of the complaint, the Sylvester board have usurped, intruded into and are exercising franchises already granted, the right to exercise which belongs to the Elder board."

The complaint contains no allegation that even suggests that plaintiffs regarded the office of director as a franchise,

nor does the record anywhere contain anything to that effect.

The opinion quotes from *People v. Londoner*, 15 Colo. 247, 25 Pac. 183, a definition of a franchise, and a statement that "franchises are usually conferred upon corporations for the purpose of enabling them to do certain things. The franchises are vested in the corporate entity," but the quotation omits the very important concluding words of the paragraph, viz: "rather than in the officers."

How this can be supposed to sustain the position taken by the court is not apparent.

If franchises vest in the corporation, rather than in the officers, the holding of the office of director, although not lawful, is not an illegal holding of a franchise. With deference to the opinion of the majority, I submit that the decision is reached by a confusion of ideas. The holding is that to act as a director upon a false claim of right, so to do is a wrongful exercise of a franchise. If that be true, the right to act as a director must be a franchise, and there must be as many franchises as there are directorships. The mistake lies in considering the individual action of a director as an exercise of a corporate franchise. It is the combined action of a majority—the action of the board—which becomes the action of the corporation and constitutes the exercise of a franchise. That this is so will appear from a simple illustration.

Suppose a board of five directors, of whom two are not entitled to the office, but acting therein; the board, the three *de jure* directors concurring, performs some corporate act. If it is within the corporate franchise, no one can complain of it. If it is not an authorized act, nevertheless it is not due to the holding of office by the *de facto* directors, and the ground of complaint is not against them, but against the *board*, for the exercise of a franchise not granted to the corporation. The case is not different when the *de facto* directors concur in the action. Its validity depends not on their title to office, but on the terms of the secondary franchise, the franchise *to do*.

How, then, can it be said that, because men not entitled to act as directors have so acted, there has been a wrongful exercise of a corporate franchise?

The opinion recognizes, as it must, that, in general, corporations have but two franchises; one to be a corporation, and the other to do whatever the charter authorizes to be done. No additional franchises to be directors have been mentioned, and no such franchise is known to the law.

Speaking of a franchise, the court said in *Arapahoe County v. Printing Co.*, 15 Colo. App., at p. 203, 61 Pac. 499:

"As applied to corporations, it constitutes its right to do business, and, also, in so doing, to exercise certain special powers and privileges which do not belong to citizens of the county generally of common right, and is vested in the corporate entity."

In *Am. S. & R. Co. v. People*, 34 Colo. 240, 82 Pac. 531, this court discussed franchises, pointing out that there is a primary franchise *to be*, and a secondary one *to do*, i. e., to carry on the business which the corporation is organized to transact; but nowhere is there a suggestion that there are still other corporate franchises. A franchise is a grant or special privilege conferred by the sovereign power of the state. A corporation can not come into being without the power so to do is granted by the state, either by general or by special legislation; and when so in being, it can do only that which its charter authorizes it to do. Does any one suppose that the power to act as a director is a grant from the state in the sense in which a franchise is said to be granted? True, the office is created by law, but the right to hold it is conferred by the stockholders. It is the right to hold the office, and not the office, which is in controversy. In the case of the Adams Mining Company, the secondary franchise is the right to do whatever a mining company may do under our laws. If it does no more than that, its franchise has not been wrongfully used, whether it has been under the control of directors *de jure* or *de facto*. If it exceeds its powers, it is for the state to take

action to prevent a misuse of the franchise. *Commonwealth v. Ins. Co.*, 5 Mass. 230, 4 Am. Dec. 50. There being no franchise to act as a director, there can be no usurpation of a franchise by an unauthorized holding of such office.

If an unfounded claim to the office of director of a private corporation is a franchise, it is at least surprising that the majority opinion cites no case to that effect. It is also to be noted that in the decisions of this court and the Court of Appeals no case can be found in which the term franchise is used as including an office. Furthermore, since the question of right to office in a private corporation in no way concerns the public, the majority opinion is squarely in conflict with the case of *People ex rel. v. C. E. Ry. Co.*, 8 Colo. App. 301, 46 Pac. 219. The syllabus of that case states that:

"Proceedings in the nature of *quo warranto* are available only to protect public interest as contradistinguished from private rights. As a rule, whenever it is discovered that such proceedings are brought for the latter purpose, they are not entertained."

In the opinion it is said:

"There seems to be no dissent from the general position that in order to support an action by the people for the redress of a wrong, that wrong must appear to have been done to the people."

The controversy in the case at bar is one wholly concerning private rights. So long as the corporation does not exceed its chartered powers, the public is not at all interested in the question as to who exercises those powers.

The opinion reiterates that the exercise of powers as a director by one not entitled to the office is the usurpation of a franchise, and adds: "*Quo warranto* in such a case affords a remedy," followed by the citation of a number of authorities. The case from 26 Colo. App. is not in point, since it concerned a claim to be a corporation, in which it is not denied that *quo warranto* is the remedy. The other citations support the statement that *quo warranto* affords

a remedy, but not that the unlawful holding of the office of director is the usurpation of a franchise. Upon the first point, however, the cases cited are not pertinent in this case, because they are without exception from jurisdictions in which the scope of *quo warranto* has been enlarged by statute to include offices in private corporations. An examination of the citations from text books shows that the general statement that *quo warranto* is the remedy in a case like this is based on decisions where the writ was proper because of the statutory provision above mentioned.

If the common law information applied, it is very remarkable that it never has been so applied in England, and that in this country the information has been by statute made available in an inquiry like this, or other statutory proceedings have been provided.

The majority opinion then discusses what is called "the merits of the case as tried," including, it is said, the question of the validity of the meeting of December 18, 1913. It is stated, in such discussion, that "plaintiffs contended throughout the trial below that they were chosen directors at the 1913 meeting. Defendants contended that no valid meeting had been held, and that they were hold-over directors. The issue as finally settled and tried involved nothing but the legality of the 1913 meeting, which depended upon the regularity of the call."

The above statement as to the defendants' contention is without any support in the record, and must have been based upon allegations in the brief of plaintiffs in error.

The complaint, p. 12 of Abstract, charges the defendants —plaintiffs in error here—with claiming to be directors under the election of December 18, 1913. The fourth defense (Abstract, p. 30) alleges "that the annual meeting of the stockholders was held on Thursday, the 18th day of December, 1913; * * * that Sylvester and the other defendants were elected directors for the ensuing year, and entered upon the discharge of their duties," etc.

Nowhere in the pleadings is the legality of that election questioned, and the case was tried throughout on the theory

that the persons then elected were entitled to the offices. Indeed, the first defense sets up that since there was an election of directors on December 9, 1914, "the validity or invalidity of the election held December 18, 1913, was *no longer* of any importance." This refers to the validity of the *election,* and not of the meeting. The only reference to the validity of the meeting was made by the court in the inquiry whether defendants admitted that the annual meeting of December 18, 1913, was a properly called meeting. To this the attorney for the defendants replied: "I want that question passed upon by the court." The court then said: "I see your contention is there was no proper meeting, and if there was no proper meeting, you are at least hold-over directors." The attorney said: "They must show a proper meeting." The cause then proceeded, and a mass of evidence was introduced on both sides to show what was done at the 1913 meeting.

The right to the proxies held by the respective parties was litigated at length, and the question suggested by the court was not again mentioned at the trial. Evidently the parties recognized that without raising that issue by the pleadings, it could not be tried, and, as both sides, in terms, based their claims to office on that election, and defendants themselves introduced in evidence the call for that meeting, the court was justified in finding that the validity of the call was admitted. The first mention of the matter on the part of the defendants is in the motion for a new trial, where it is pointed out that the meeting was held on the third Thursday in December, while the by-laws named the second Wednesday of that month for the annual meeting.

It is impossible, therefore, to support a reversal on that ground, without violating the rule that a new issue can not be injected into a case after trial.

If, as is clear, our statute does not cover a contest over an office in a private corporation, and there is no other remedy at law, it would seem that equity should have jurisdiction.

In *Pagosa Springs v. People,* 23 Colo. App. 479, 130 Pac. 618, it is held that the equity powers granted to the district courts by our constitution are not limited to cases known to equity jurisprudence at the time the constitution was adopted, and that they should be expanded to include cases in which the law affords no remedy. That case involved an election under the local option statute, and it was held that a denial by election officials of the right to vote was a fraud on the rights of an elector.

This principle has been recognized in other jurisdictions, where officers of corporations have attempted by fraud to obtain control.

In *Trask v. Chase,* 107 Me. 137, 77 Atl. 698, it was held that an unauthorized sale of stock, to enable a majority of the directors to secure control of the company through ownership of a majority of the shares, was a fraud on the other stockholders; and that a suit in equity to redress the wrong was proper, even though there might be another remedy.

It seems to be the practice in Kentucky to test the right to corporation offices by suits in equity, the parties found not to be entitled to the offices being restrained from claiming them. *Proctor Coal Co. v. Finlay et al.,* 98 Ky. 405, 33 S. W. 88; *Schmidt v. Mitchell,* 101 Ky. 570, 41 S. W. 92, 72 Am. St. 427, 58 L. R. A. 809.

To deny stockholders the right to vote is as great a fraud as to issue new stock to gain control of the corporation, the result in each case being to take from the holders of a majority of the stock the right to control.

The case at bar, as here presented, charges the defendants with fraud and collusion in the holding of an election of directors of a private corporation with a view to the control of the corporation and its property.

, This gives the court jurisdiction, though there are other grounds upon which the jurisdiction may be sustained.

The right of a majority to elect directors and control the corporation is a vested property right. *State v. Greer,* 78 Mo. 188; *Smith v. R. R. Co.,* (C. C.) 64 Fed. 272; *Hays v.*

*Commonwealth*, 82 Pa. St. 461; *Baker's Appeal*, 109 Pa. St. 461.

A court of chancery must, therefore, have jurisdiction to try a case in which such right is involved, there being no remedy provided by statute.

The right to vote at a corporate election may be protected by a court of chancery, and there are many cases in which the authority has been exercised, even to the extent of holding the state powerless to change the manner of voting from that prescribed in the charter.

It would be a vain thing for a court to intervene as to the manner of electing, if it had no power to give relief when a fair and valid election is prevented by fraud, or otherwise.

The evidence fully sustains the finding of the trial court that "the rights of the majority stockholders were most grossly violated by the defendants," and it would be a reproach to our jurisprudence if no adequate and immediate remedy were provided. Equity furnishes that remedy.

It may be conceded that equity has no jurisdiction to decide an election contest when it involves only the question of the right to vote, or the regularity of the election in some particular, when there is no charge of wrong doing or bad faith; but, where there is a charge that defendants conspired to prevent and prevented a fair election, for the purpose of retaining control of a corporation, some of the defendants thus conspiring having property interests to be conserved by such control, a different rule prevails. A court of equity may then act to prevent the fruition of the fraudulent designs.

The fact that the title to corporate offices was also involved did not oust equity of jurisdiction.

Having taken jurisdiction on settled equitable grounds, the court was entitled to retain it and try all the issues. These propositions require the citation of no authorities.

The judgment is right and ought to be affirmed.

*Decided December 3, A. D. 1917. Rehearing denied February 4, A. D. 1918.*