S. F. Houtchens v. James E. Mercer, District Judge.

Motion No. 9118. Decided May 7, 1930.

(27 S. W., 2d Series, 795.)

*Simpson, Collins & Moore, J. H. Craik* and *Zula Stevenson,* for relator.

Mr. Chief Justice CURETON delivered the opinion of the court.

The relator has filed a motion for leave to file a petition for mandamus in this Court against the Honorable James E. Mercer, Judge of the 67th Judicial District. The petition shows that he was an attorney at law, engaged in the practice of his profession, when on the 11th day of January, 1930, a complaint was filed against him in the 67th District Court of Tarrant County, having for its purpose the relator's disbarment. The case was tried, and on the 22nd day of February, 1930, the court entered a judgment revoking his license to practice law. The judgment was made effective from its date, and costs were awarded against him. The motion for new trial filed was overruled, exception taken, and notice of appeal given to the Court of Civil Appeals. A motion was also filed praying the court to fix the amount for which a supersedeas bond might be given in order that the judgment might be superseded. This motion was overruled. The court declined to fix the amount of the supersedeas bond, and refused to allow relator to execute and file such a bond, because of the opinion the relator was not entitled to supersede the judgment revoking his license. To this action of the court exception was taken. Subsequent to the proceedings above named, the relator filed an ordinary appeal bond in the cause, for the purpose of perfecting his appeal to the Court of Civil Appeals.

The purpose of the petition tendered the Supreme Court in the instant case is to obtain a writ of mandamus compelling the respondent, as Judge of the 67th Judicial District, to grant the relator "the right to enter into and file a good and sufficient supersedeas bond," and to require the respondent "to fix a satisfactory and reasonable supersedeas bond in a reasonable amount."

We regard the law as settled in this State that proceedings to suspend or disbar an attorney are of a civil nature, and that from the judgment of disbarment the attorney has a right of appeal to the Court of Civil Appeals. Texas Jurisprudence, Vol. 5, page 418, sec. 17; Scott v. State, 86 Texas, 321; see also Newson v. State, 236 S. W., 228; Lotto v. State, 208 S. W., 563.

In the case of the State v. Tunstall, 51 Texas, 81, this Court held that a disbarment proceeding was a criminal or quasi-criminal case, over which the Supreme Court had no jurisdiction. However, in the later case of Scott v. State, 86 Texas, 321, this Court in effect overruled the Tunstall Case, and held that such a proceeding was a civil case, over which our Courts of Civil Appeals have appellate jurisdiction. The right of appellate review thus declared is consistent with the rule which obtains in most jurisdictions. 6 Corpus Juris, p. 610, sec. 90, and cases in the notes. We adhere to the rule as stated in Scott v. State, supra, and hold that our Courts of Civil Appeals have appellate jurisdiction over disbarment cases.

From what has been said as to the proceedings in this case in the District Court, it is obvious that the right of the Court of Civil Appeals to determine the regularity or validity of these proceedings, as well as to dispose of the case upon its merits, has attached. Since this is so, that court has the power to issue whatever process may be necessary to secure the relator any right to which he may be lawfully entitled. Revised Statutes, Article 1823, reads:

"Said courts and the judges thereof may issue writs of mandamus and all other writs necessary to enforce the jurisdiction of said courts."

It is clear that if the relator was entitled to supersede the judgment against him, and thereby preserve his existing status as a practicing attorney until the Court of Civil Appeals could determine the issues in the case, then that court under its power to enforce its jurisdiction has authority to enter any order and issue any process necessary for such purpose, to the end that its final decision might be made effective. Jurisdiction to determine the appeal necessarily comprehends the power to secure to the appellant not only

the right of appeal, but the right to have the object of his appeal made effective in the statutory or lawful way. To say that one has the right to appeal to the Court of Civil Appeals upon a supersedeas to secure a stay of execution of a judgment, but that the appellate court is impotent to vacate an order of the trial court denying that right, and to require the district judge to enter a proper order for its enforcement, would be a denial of the admitted or granted power to hear and determine the appeal. If in fact and in law relator was entitled to supersede the judgment against him (a question we are not here deciding), then for the District Court to deny him the right constitutes an attempt on the part of that court to retain jurisdiction over the subject matter of the litigation for the purpose of enforcing its decree by contempt, one of the methods of enforcing a disbarment decree (2 Ruling Case Law, pp. 1110, 1111, Secs. 202, 203), or other appropriate process, when under the law that jurisdiction was suspended, or would have been suspended but for the unlawful interference of the trial court. If the order of the trial court was without warrant of law, then his refusal "to allow the defendant to execute and file a bond superseding the judgment in this cause pending appeal" would constitute a denial of and an interference with the constitutional and statutory jurisdiction of the Court of Civil Appeals, which that court is clothed with ample authority to abate and can correct by its original writ of mandamus and such ancillary writs as may be necessary or appropriate thereto. 3 Texas Jurisprudence, p. 368, Sec. 261, p. 390, Sec. 279; Houston, B. & T. Ry. Co. v. Hornberger, 141 S. W., 311; Houston, B. & T. Ry. Co. v. Hornberger, 106 Texas, 104; Cattlemen's Trust Co. v. Willis, 179 S. W., 1115; Birchfield v. Bourland, 187 S. W., 422; Aetna Club v. Jackson, 187 S. W., 971; 38 Corpus Juris, p. 943, Secs. 157, 159; 18 Ruling Case Law, p. 304, Secs. 240, 241.

In the case of Aetna Club v. Jackson, cited above, the Court of Civil Appeals had before it an original application for a writ of mandamus to require the trial judge to fix the amount of bond necessary to supersede a final judgment granting an injunction. The court, after examining the statute, concluded that the relator in that case was entitled to supersede the judgment. Having reached this conclusion, it directed the issuance of the mandamus, saying:

"Where there is a right there must be a remedy. We having concluded that the statutes give the right to appeal from and the right to supersede all final judgments in civil cases by a compliance with the law, we must look for a way for appellants to comply with

the law. The appellate courts of this state have declared in many cases that where the statute prescribes no bond, then it is proper and necessary for the court to fix the bond. Hill v. Halliburton, 32 Texas Civ. App., 22, 73 S. W., 21. See note 22 L. R. A. (N. S.) 1909, p. 316. The principle of judicial discretion does not apply in this sort of case. It was therefore the duty of respondent to fix the amount of the bond to be given upon appeal, and it is the duty of the clerk to approve same as to the sufficiency of the sureties and then to file it, and the court has no authority to order or direct the clerk to do otherwise."

Since we have concluded that the Court of Civil Appeals has the power to issue the writ of mandamus, and such other writs ancillary thereto as may be necessary to protect the relator in every right he has under the law, it is the rule that we should ordinarily decline to take jurisdiction under our original power to issue the writ of mandamus until the relator has applied to the Court of Civil Appeals for such relief, if any, to which he may be entitled. 38 Corpus Juris, p. 827, Sec. 524; 18 Ruling Case Law, p. 100, Secs. 14, 15.

In Corpus Juris, cited above, the rule is stated as follows:

"Even in cases in which an appellate court has original but concurrent jurisdiction with an inferior court, it is only in cases of more than ordinary magnitude or importance, or when some good reason is shown for not making the application to the inferior court for the writ, that application for mandamus may be made to the appellate court; and although the appellate court has original jurisdiction, it will not entertain an application for mandamus where there is an adequate remedy by application for the writ, or for other relief, to a court of inferior jurisdiction," * * *

In Ruling Case Law, Sec. 14, supra, the rule is given as follows:

"Concurrent jurisdiction in a lower court to issue the writ is not necessarily ground for the refusal of the higher court to assume original jurisdiction, and the fact that a court of last resort may have appellate jurisdiction in the same matter does not necessarily deprive it of original jurisdiction, where such jurisdiction is expressly given by the constitution. But this has been considered as ample ground for the higher court in its discretion to refuse to assume original jurisdiction, as such a remedy in the lower court is in the nature of another adequate remedy; and the rule has been laid down that where the court of last resort and inferior courts have concurrent jurisdiction to grant an original application for mandamus the application should first be made in the inferior court unless a good and sufficient reason is given for applying in the

first instance to the court of last resort. Where, however, the necessary delay in first applying to the lower court and the review of its decision on appeal may be such as to render the remedy essentially useless, the higher court will ordinarily exercise its original jurisdiction."

In the case of Yett v. Cook, 115 Texas, 175, cited by the relator, the parties first presented their application for relief to this Court. This Court, however, without writing an opinion, declined to take jurisdiction of the application for mandamus and ancillary writs, until the relator there had first applied for relief to the Court of Civil Appeals, where the case was then pending on appeal. In the petition in that case finally presented to this Court it was made known to us that the relators there had applied to the Court of Civil Appeals for relief, but that their petition therefor had been finally refused. We took notice of these allegations in the Yett Case, as shown by our opinion. (115 Texas, 175, 183.)

Following the rule quoted above from Corpus Juris and our practice as shown by the Yett Case, we must decline to take jurisdiction in the instant case, because the relator has not first applied to the Court of Civil Appeals for the relief he may be entitled to. Counsel for relator in the written argument accompanying the motion for leave to file correctly states the rule as follows:

"We understand the rule of the Supreme Court to be that where a Court of Civil Appeals has concurrent jurisdiction, the petitioner will be forced to file his application in the Court of Civil Appeals, unless there be some unusual reason for filing the application in the Supreme Court."

We have examined the petition for mandamus in this case, and the accompanying exhibits, and we see no reason why the relief, if any, to which the relator is entitled may not be had as expeditiously and as effectively in the Court of Civil Appeals as in this Court. We must, accordingly, decline to take jurisdiction of the application for mandamus. The motion for leave to file is overruled, without prejudice, however, to the relator's right to apply to the Court of Civil Appeals for such relief, if any, to which he may be entitled; and also without prejudice to his right, when he brings himself within the rule, to again apply to this Court for such relief, if any, to which he may then be entitled, and which may have been denied him.

Relator will be permitted to withdraw the exhibits accompanying his motion for leave to file, if he so desires.