## ESTES v. STATE.
### No. 12990.

Court of Civil Appeals of Texas.
Fort Worth.
March 22, 1935.

Rehearing Denied April 19, 1935.

McLean, Scott & Sayers; Mike E. Smith, and S. R. Graves, all of Fort Worth, for appellant.

H. C. Wade and Frank Ogilvie, both of Fort Worth, for the State.

BROWN, Justice.

This suit was instituted on the 1st day of October, 1932, by a group of practicing attorneys, who reside in Tarrant county, Tex., against appellant, Dee Estes, for the purpose of revoking appellant's license to practice as a lawyer in Texas.

Complainants alleged that during the months of January, February, March, and April, 1925, appellant was a duly licensed attorney of Tarrant county, and the state of Texas, and acting as attorney for one Mrs. Luna Buffalo, duly appointed as guardian for her minor daughter, Luna May Buffalo, by the probate court of Tarrant county, prevailed upon said guardian to authorize appellant to lend the sum of $1,500 belonging to the minor, and after receiving such authority appellant purchased with such funds a note in the principal sum of $1,500, which note had been executed by appellant and his wife, payable to the order of one L. R. Barton; that the note was secured by a second and inferior lien upon the real property involved, and that in purchasing the property appellant did not pay at least one-half of the total consideration in cash, or its equivalent, as required by the probate law governing the status of properties on which loans may be made, which law was well known to appellant; that no application of any kind was filed in the county court, by the guardian, seeking permission to so invest the minor's funds, and no authority was had from such probate court permitting such investment; that under the law the guardian had no right or authority to use the minor's funds to purchase such note, secured only by a second and inferior lien; that appellant knew the requirements and restrictions of the law, but advised and actually consummated the deal.

As a second count, complainants alleged that appellant represented that he paid $1,500 for the vendor's lien note, when in truth he only paid $1,250 therefor, and fraudulently appropriated to his own use the difference, to wit, $250.

As a third count, complainants alleged that appellant was convicted, on or about April 13, 1928, in the District Court of the United States for the Northern District of Texas, Fort Worth Division, of the offense of using the United States mails to defraud, in connection with the promotion of oil companies and syndicates, as disclosed in cause No. 2691, on the docket of said court; and that such crime is punishable by confinement in the penitentiary for more than one year and constitutes a felony.

Appellant having specially excepted to complainants' first petition because same showed no excuse for failure to bring the proceedings against appellant within four years after the matters complained of had been done, as alleged, the trial court required complainants to amend, and the amendment was addressed to the matters arising under the guardianship.

Complainants alleged that the guardian and minor ward lived in the state of California, when the transactions complained of were had, and continued to live there; that the guardian died about the year 1927; that the ward did not reach her majority until about the year 1931, and then came to Texas to make inquiry about her estate,

and for the first time learned of the matters complained of and then made same known to the district attorney of Tarrant county and the other persons who bring this suit. To this amended pleading appellant again urged the defense of limitation.

The trial court submitted three special issues to the jury. The first issue was directed to the handling of the minor's funds, in the note transaction. The court, in propounding the question, asked if the handling of such matter was "fraudulent conduct," was "dishonorable conduct," and was "malpractice." The jury found it was all three.

The second issue submitted the question of whether appellant fraudulently appropriated $250 of the minor's funds to his use, and the jury answered such issue that he did not. The third issue was not answered, in view of the finding made on the second issue. The trial court submitted no issue to the jury upon the matter of appellant's conviction in the United States District Court, stating that such was a matter of law for the trial court to determine.

Upon this state of the record, the trial court entered judgment suspending appellant from the privilege of practicing his profession for six months, under the jury verdict, and forever disbarring appellant, under the charge of having been convicted of a felony.

The statute of limitation upon the bringing of causes of action within four years after the accrual thereof, as is specifically provided for by article 5529, Rev. Civ. Statutes, is presented to us for consideration by proper assignments of error. The statute is: "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued and not afterward."

After specifically providing periods of limitation for certain named causes of action, the Legislature, in its wisdom, enacted the above-quoted article for the obvious purpose of prescribing a definite time in which all causes of action, not otherwise provided for, must be brought, or be barred.

Statutes of limitation are purely creatures of legislative enactment. They are favored, in part, to prevent stale demands being urged in the courts, and to insure prompt bringing of suits, to the end that the matters for determination may be fresh in the minds of those who may be called upon to establish the facts giving rise to a suit, or those providing a defense thereto.

In Blount v. Bleker et al., 13 Tex. Civ. App. 227, 35 S. W. 863, 864, in applying the statute, now under consideration, to an alleged cause of action, for which no statute existed prescribing a period of limitation, by expressly naming such cause of action, the court said: "But by article 3207, Rev. St. [now article 5529] a limitation of four years is expressly provided for all actions not embraced in the other provisions. And it seems to us to necessarily follow that such suits as this are covered by that provision. It has been applied by the supreme court to many kinds of actions, equitable as well as legal, for which other provision is not made." Citing some half dozen cases covering different kinds of civil actions.

In the case of Houtchens v. Mercer, District Judge, 119 Tex. 431, 29 S.W.(2d) 1031, 1033, 69 A. L. R. 1103, Judge Critz, speaking for Section A of the Commission of Appeals of Texas, quotes from the opinion by Chief Justice Cureton, Houtchens v. Mercer, District Judge, 119 Tex. 244, 27 S.W.(2d) 795, wherein the Supreme Court said: "We regard the law as settled in this state that proceedings to suspend or disbar an attorney are of a civil nature, and that from the judgment of disbarment the attorney has a right of appeal to the Court of Civil Appeals."

After positively holding that a suit such as the one now before us is a "civil action," in the mandamus proceedings, brought by Houtchens, to enforce his right to supersede the judgment against him, during the pendency of his case on appeal, the Houtchens Case reached the Supreme Court again, on its merits, and having been referred to Section A of the Commission, Judge Critz again wrote the opinion of the court and said: "It is the settled law of this state that a disbarment proceeding is in the nature of a civil case. * * * It follows that the general rules of practice and procedure applicable to civil cases should govern in the trial of a disbarment proceeding." Houtchens v. State (Tex. Com. App.) 63 S.W.(2d) 1011, 1013.

No effort is made in the petition to show that the ward lost any amount whatever by and through the investment of her money in the second lien note; the suit is pitched solely upon the theory that such an investment of the ward's funds, back in the year 1925, was had and done contrary to the pro-

visions of the statutes of Texas governing the investment of moneys belonging to a ward.

There is no testimony showing that the ward lost anything by the investment.

We hold that the statute of limitations, set forth in article 5529, of necessity, applies to the cause of action and the several counts found in the petition. . .

If the lawmaking bodies of Texas have deemed it wise to limit the time in which all indictments must be brought, charging citizens, in Texas, with felonies, excepting only the crime of murder, and likewise dealing with all misdemeanors, and if such bodies have plainly provided periods of limitation upon the bringing of all civil actions against natural and artificial persons, we cannot close our eyes to the fact that the causes of action attempted to be brought against the appellant must be brought within the time prescribed by article 5529 of the Revised Civil Statutes. To hold otherwise is to say that the statute, which is plain and comprehensible, does not mean what it says, and compels us to read into the acts of the Legislature a legislative intent, which we feel is neither warranted nor justly deducible.

This suit was brought to revoke a license issued by the state of Texas, to appellant, giving him a civil right, namely, to practice a profession in Texas. The allegations in the petition are not sufficient to excuse the failure to bring the suit sooner, and there is no evidence in the record tending to excuse such failure to act.

There is neither allegation nor proof that appellant did anything to hide the note transaction from the guardian, the ward, the complainants, or the public. Nor is there any such allegation or proof with respect to the mail fraud suit filed against appellant in the United States District Court, sitting in the city of Fort Worth, Tarrant county, Tex., and the judgment rendered against appellant therein. Bass v. James, 83 Tex. 110, 18 S. W. 336.

We do not believe that the laws of the state of Texas, touching disbarment proceedings, should be construed in such a manner that the state, or any citizen, or those authorized under any statute to bring disbarment proceedings against an attorney at law, can sit by and hold over a lawyer's head a grievous mistake he has made, a wrongful act he has done, or a criminal conviction had against him, for more than

four years before seeking his disbarment. Such a construction is clearly against the spirit of American justice and contrary to the teachings of the "Judge of judges," who said: "Go and sin no more."

Reaching the conclusion shown, we do not deem it necessary to discuss the many other propositions presented.

The judgment of the trial court is reversed and judgment here rendered for appellant.