**STATE of Texas ex rel. Mrs. Virginia YELKIN, et al., Relators,**

v.

**Thomas E. HAND, Jr., et al., Respondents.**

**No. 13827.**

Court of Civil Appeals of Texas.

Houston.

March 21, 1961.

**468**

------♦------

Joseph G. Resweber, County Atty. of Harris County, Houston, Graves, Dougherty, Gee & Hearon, and M. K. Woodward, Austin, and Barrow, Bland & Rehmet, David Bland, Houston, for relators.

Bracewell, Reynolds & Patterson, Joe H. Reynolds, and Bell & Singleton, Houston, for respondents Thomas E. Hand, Jr., Thomas E. Hand, Sr., Joe H. Reynolds and Mrs. Margaret J. Smith.

Fulbright, Crooker, Freeman, Bates & Jaworski, L. Keith Simmer, Houston, for respondents Bank of Southwest Nat. Assn., A. G. McNeese, Jr., Bank & Trust Company, Charles L. Bybee, Ford W. Albritton, Peter G. Brooks, Earl W. Gammage, Curtis Hankamer, Robert F. Krueger and Keith Simmer.

WERLEIN, Justice.

From the judgment of the trial court decreeing that appellants, Thomas E. Hand, Jr., et al., be ousted from the offices of directors of Columbia General Life Insurance Company, and that relators, Mrs. Virginia Yelkin et al., are entitled to possession of such offices as the legally elected directors of Columbia General Life Insurance Company at the annual meeting of stockholders held March 10 and 11, 1959, appellants, Thomas E. Hand, Jr., et al., have perfected their appeal to this Court.

Pending such appeal the State of Texas, by and through Joseph G. Resweber, County Attorney of Harris County, Texas, appellee, but hereinafter called complainant, on the relation of Mrs. Virginia Yelkin et al., has filed herein their complaint of contempt and application for temporary restraining order and for temporary injunction, in which they complain against the Bank of the Southwest National Association, Houston, A. G. McNeese, Jr., Houston Bank & Trust Company, Charles L. Bybee, Ford W. Albritton, Peter G. Brooks, Earl W. Gammage, Curtis Hankamer, Robert F. Krueger, Keith Simmer, Mrs. Margaret J. Smith, Thomas E. Hand, Sr., Thomas E. Hand, Jr., William W. Hand, and Joe H. Reynolds, some of whom are appellants herein and all of whom are called Contemnors. We shall refer to the Bank and the other alleged contemnors, other than appellants, as respondents.

After carefully weighing the evidence consisting of affidavits and oral testimony, we have concluded that although the Bank of the Southwest National Association, Houston, and the other respondents were advised of the injunctions restraining appellant Hand and the other appellants from calling a meeting for the election of directors or participation in such election, they acted independently of appellants in soliciting proxies for the election of directors at the annual stockholders meeting which was called by appellants for March 14, 1961, but which, however, was not called for the purpose of electing directors. The evidence falls far short of showing any participation or concert of action between appellants and respondents in connection with the solicitation of proxies for the election proposed by respondents. It would be improper, therefore, for this Court to grant the temporary injunction sought herein on the ground that appellants have aided or abetted or in any manner cooperated with respondents.

The issue before us is whether or not said Banks and the other respondents should now be enjoined from conducting an election of officers at the annual stockholders meeting of said company, which was set for March 14, 1961 but postponed by this Court until March 28, 1961. The matter will be better understood if reference is made to former opinions of this Court and the Supreme Court in connection with this long drawn out litigation. See State ex rel. Yelkin v. Hand, Tex.Civ.App., 331 S.W.2d

789, writ ref., n. r. e., Tex., 333 S.W.2d 109; Hand v. State ex rel. Yelkin, Tex.Civ.App., 335 S.W.2d 410, writ ref., n. r. e.; State ex rel. Yelkin v. Hand, Tex., 333 S.W.2d 108; and Hand v. State ex rel. Yelkin, Tex., 337 S.W.2d 798. The judgment of the trial court hereinabove referred to has not been superseded by appellants, and both appellants and relators are enjoined pending the entry of final judgment on the merits of this cause, from taking, or causing to be taken, directly or indirectly any action provided for in the by-laws of Columbia General Life Insurance Company for the holding of or causing to be held any election of corporate directors of said Company or from holding or causing to be held or participating in or being candidates for election in any such election. They are also enjoined from taking or causing to be taken, directly or indirectly, any action for the calling of any meeting of the stockholders of said Company, or aiding or assisting anyone else in the calling of any meeting of the stockholders for the purpose of submitting to said meeting of stockholders any proposed plan of merger or consolidation concerning said Company, or any proposed sale of substantially all of the assets of said Company and from attending any shareholders' meeting of the Company called in any manner for the purpose of considering any plan of merger, and from voting in person or by proxy any stock owned or controlled by them in said Company at any stockholders meeting called in any manner for the purpose of considering any proposed plan of merger, etc. Relators are also enjoined from in any way interfering with the normal conduct of the business of said Company.

The evidence shows that the respondent banks are the owners and holders of record of 247,867 shares of the capital stock of said Company. Such shares were pledged as collateral to the banks in a series of transactions extending from 1955 to 1960 to secure promissory notes executed by the Hands in the main part prior to any litigation between appellants and relators. The makers of such notes failed to meet the required payments of principal and interest, and the banks foreclosed and acquired the shares at sales held on the third day of January, 1961. Relators are understood to own less than 21,000 shares of capital stock out of a total of 1,243,429 shares.

On March 1, 1961 said banks solicited the stockholders of the Company for proxies, and submitted the names of nominees for directors, none of whom are parties to the present suit. The evidence shows that they now have the proxies of more than 2,934 stockholders holding over 684,989 shares of the capital stock of the Company.

It is their contention that they are in no wise bound by the injunctions heretofore granted in connection with this litigation, and that they are free to vote such stock in the election of officers to be held at the annual meeting of the stockholders of the Company, and that under Article 2.24 of the Business Corporation Act of Texas, V.A.T.S., and the by-laws of the Company, Article 3, Section 1, which provides that the annual meeting of the stockholders shall be held at the home office of the Company on the second Tuesday in March, the stockholders meeting has been properly called and they are entitled to vote their stock and proxies at such meeting.

It is relators' contention that the judgment of the trial court in this case has decreed that they are entitled to the possession of the offices of directors of the Company and as such they are the proper officers and directors to call and conduct any election of the directors of the Company. They further assert that unless the temporary injunction requested by them be granted, the respondents will proceed at the annual stockholders meeting postponed until March 28, 1961, to elect their slate of officers, and if that is done, the present cause will be moot and they will suffer irreparable damage. Relators rely largely upon the case of Hand v. State ex rel. Yelkin, 335 S.W.2d 410, in which this Court affirmed the judgment of Judge W. Sears McGee

granting a temporary injunction ancillary to this quo warranto suit now on appeal in this Court from trial on its merits.

This Court held that the trial court did not abuse its discretion in granting the temporary injunction which restrained appellants herein from holding, or causing to be held, any election of corporate directors of said Company. In the opinion of this Court, it was stated that if the appellants were not duly and properly elected officers and directors, then the relators herein are the de jure directors entitled to hold office until their successors are elected, and that the trial court had the duty to maintain the status quo as distinguished from the adjudication of the merits of the case upon a final hearing. The injunction granted by the trial court and sustained by this Court also restrained appellees, the relators herein, from interfering directly or indirectly with the normal operations and conduct of the business of the company.

It was contended by appellants that the court erred in granting said temporary injunction for the reason that it deprived the majority stockholders of their statutory right to elect the directors at the time and place and in the manner prescribed by statute. We held that the injunction merely postponed the election until such time as the case could be tried on its merits and a special meeting for the election of directors could be called by the parties who might show themselves entitled to the offices of directors. We also stated that if the offices in question carried with them certain perquisites and the appellees were illegally deprived thereof, they might possibly recover the same in a suit for damages; such suit, however, would not confer upon them the right of management and to serve as directors of the corporation until such time as an election could be called, nor the right to call the election and supervise the same.

The contest then was between the Hand group and the Yelkin group, that is, between the appellants in this suit and the relators. Appellants there contended that as a matter of law they were entitled to vote 57,241 shares of stock of the company which were held in trust for it. The evidence shows that such stock has since been transferred and is no longer held in trust for the company.

The present application for a temporary restraining order and temporary injunction prays that we now temporarily enjoin respondents from soliciting proxies and from holding an election of directors at said annual stockholders meeting. Notwithstanding the fact that the trial court entered judgment for relators in the present suit, it continued in force said injunctions so that relators are still enjoined in the same manner as appellants. Thus, relators' hands are completely tied, and they cannot call an election, participate in an election, or solicit proxies. Relators did not except to the court's injunction restraining them and apparently have done nothing in an effort to be released from the operation of said injunctions. Nor have they filed suit in the district court to enjoin respondents in any way although they were not inhibited from so doing.

If the temporary injunction is refused at this time, respondents will doubtless proceed with the election, and in all probability elect their slate of officers. They are not in any way parties to this litigation and are not bound by the injunctions now in force. They have not acted in concert with appellants, and they are now merely asserting their right as stockholders to elect directors independently of the contest between the Hand group and the Yelkin group. It is our opinion that this Court properly upheld the temporary injunction granted by the District Court in Hand v. State, and we would now be disinclined to dissolve the injunctions restraining appellants from voting their stock or participating in any election, even if we had the power and jurisdiction to do so.

The question now, though, is whether innocent stockholders operating independently of both appellants and relators, should

be enjoined by this Court from exercising the rights given them both by statute and the by-laws of the Company to vote their stock and proxies at an annual election. Article 3, Sec. 1, of the By-laws of the Company provides:

"The annual meeting of the stockholders of the Company shall be held at the home office of the company in Houston, Harris County, Texas, at 10 o'clock a. m. on the second Tuesday in March of each year."

Section 3 of said Article provides:

"Written or printed notice of each regular or special meeting of stockholders shall be prepared and mailed to the last known postoffice address of each stockholder not less than ten days before any such meeting, and notice for a special meeting shall state the time, place and purpose, or purposes, of same. The failure to give notice, or irregularity in the notice, of any regular annual meeting of stockholders shall not invalidate such meeting or any proceedings thereat."

The evidence shows that the meeting called for March 14, 1961, and postponed as hereinabove stated, was called and notice given thereof in accordance with the provisions of Article 2.24 of the Business Corporation Act, which applies to insurance companies as well as other companies unless the Insurance Code conflicts therewith. No conflict exists in connection with the calling of stockholders meetings. The notice of the meeting was properly given by the acting secretary, Mrs. Smith, at the request of the stockholders. Indeed, the proxy statement sent out to them would in itself constitute a notice of such meeting. Moreover, the by-laws of the Company expressly provide that any irregularity in the notice shall not invalidate the meeting or any proceedings thereat.

The evidence shows that during the time this litigation has continued the stock of the Company has decreased in value from $1.75 to approximately 35 cents per share, with the likelihood that there may be a further decrease in the value of the stock in the event a new and independent board of directors is not selected by the stockholders without further delay. Although our refusal to grant the temporary injunction prayed for will in all probability render this cause moot, we do not think that such fact constitutes in itself a sufficient ground for granting the injunction. Relators contend that they will suffer irreparable damage. It may be that they have and will suffer damage as the result of the conduct of appellants. It is also true that as between the Hand group and the Yelkin group, the group finally winning would have the right as against the other to serve as directors of the Company until an election could be called, and also the right or duty to call the election and supervise the same. Undoubtedly as against appellants they have a right to the injunctions that have been granted. The question is, however, what right have they as against the independent innocent stockholders who are not parties to the litigation, and who in all probability will be injured through no fault of their own if they are prevented from electing a new board of directors?

We think the language used by the Supreme Court in Yett v. Cook, 115 Tex. 175, 268 S.W. 715, 281 S.W. 843, with reference to the exercise of a statutory right by respondents not being in violation of the applicant's rights, is applicable in connection with the present application for injunction in that the rights of the relators are not violated since the respondents are doing that which both our statutes and the by-laws of the Company give them the right to do.

Admittedly, it seems unfair that the election may be conducted without relators having any right to participate therein, but the situation was not brought about by the conduct of respondents. One wrong will not justify another. The fact that the relators' hands are tied is not a sufficient reason for tying the hands of a majority of

the stockholders two years after the 1959 election at which relators were elected directors by a majority of the stockholders, assuming, of course, that the judgment of the Trial Court becomes final. The fact that the majority of the stockholders at that time elected relators as directors to represent them for one year should not prevent the majority of the stockholders, who are in no way connected with the litigation, from electing another board of directors two years later. We are not unmindful of the fact that the rights of minority stockholders should in a proper case be protected. We think that the majority stockholders should also be protected, and that the equities of both relators and respondents must be considered and weighed. Moreover, the decision here rendered will not in any way keep relators from suing for damages for deprivation of the perquisites of office if they are legally entitled thereto.

In Grant v. Elder, 64 Colo. 104, 170 P. 198, 202, the Supreme Court of Colorado, in holding that quo warranto is an appropriate remedy where the validity of a corporate election was in dispute, quoted the following language from High on Injunctions, Vol. 2 (4th ed.), § 1235:

> " 'Indeed, the only ground upon which the jurisdiction of equity in restraint of corporate elections can be properly based is the protection of the property rights of shareholders, and it is believed that the limit to the exercise of the jurisdiction is found in such measure of preventive relief as will prevent injury to those property rights, without extending it to questions of title to corporate offices, the determination of which is to be sought in a legal rather than in an equitable forum.' "

This Court has concluded that the temporary restraining order postponing the date of the election until March 28, 1961, should be kept in force until then. The majority of the Court are of the opinion

and hold that any further injunctive relief sought against respondents should be denied.

COLEMAN, Justice (concurring).

The question presented to this Court is one of first impression. I have been unable to find any case on this precise legal question, and we have been cited none. Does this Court have jurisdiction to issue its writ of injunction to prevent stockholders, who are not parties to any litigation other than this original proceeding, from voting their stock for the election of a board of directors at the date set by statute and the by-laws of a private corporation for such an election? If we have jurisdiction, under what circumstances should it be exercised?

Section 6 of Article V of the Constitution of Texas, Vernon's Ann.St., grants the legislature the authority to prescribe by law both original and appellate jurisdiction for the Courts of Civil Appeals. Art. 1823, V.A.T.S., provides that the court and the judges thereof may issue all writs necessary to enforce the jurisdiction of said courts. We have held in Rathbun v. Boyd, 155 S.W.2d 385, that writs of injunction may issue against those not parties to pending litigation in aid of our jurisdiction in original mandamus proceedings.

We, therefore, have jurisdiction, that is, authority, to issue an original injunction for the sole purpose of preserving our jurisdiction in a case before us on appeal. Madison v. Martinez, Tex.Civ.App., 42 S.W.2d 84, error ref. We are of the opinion that in the present case an injunction is probably necessary to prevent the case before us on appeal becoming moot. However, neither the constitutional provision nor the statute cited above defines the circumstances under which our jurisdiction, once it has been found to exist, should be exercised.

"Injunction is an equitable remedy, and its grant or denial in a particular

case is governed by those fundamental and established principles by which courts of equity are guided and influenced in their judicial action and in the administration of relief. Some of the rules applicable to the exercise of the power are as binding on the courts as are the rules of law in any case; but in a measure, the application for injunction is addressed to the conscience and sound discretion of the court." 28 Amer.Jur., Injunctions, § 24, p. 514.

"It is an established principle of equity that one may not be enjoined from doing lawful acts to protect and enforce his rights of property or of persons, even though damage or loss may result to another as a necessary consequence thereof or the acts may, to some extent, interfere with the administration of justice, unless it is clearly shown that such acts are being done maliciously to vex, annoy, and injure another, and not for the purpose of preserving and enforcing one's own rights." 28 Amer.Jur., Injunctions, § 31, p. 523.

"In the administration of their remedies and relief, equity courts are always solicitous to work out the equities and justice of the cause. The extraordinary nature of the remedy by injunction calls for a particular and careful application of this guiding principle, and it is safe to say that rarely will injunctive relief be granted when it would operate inequitably or contrary to the real justice of the case. Injunctions are never granted when they are against good conscience, or productive of hardship, oppression, injustice, or public or private mischief, and it may be said to be the duty of the court whose jurisdiction is invoked to secure injunctive relief, when considering the application, to consider and weigh the relative convenience and inconvenience and the comparative injuries to the parties and to the public which would result from the granting or refusal of the injunction sought." 28 Amer.Jur., Injunctions, § 52, pp. 548–549.

In City of Lubbock v. Stubbs, Tex.Civ. App., 278 S.W.2d 516, on final judgment the trial court dissolved the temporary injunction previously granted and entered judgment against the City in a matter involving a claimed violation of certain ordinances. The City appealed and sought the issuance of a temporary injunction by the Court of Civil Appeals to restrain Stubbs from further violating the provisions of the City building code. By a divided vote the Court held that it was without jurisdiction because: (1) the order was not necessary to enforce the court's jurisdiction; (2) the relator did not exhaust his legal remedies in the trial court; and (3) did not request the trial court to supersede the judgment dissolving the temporary injunction.

In the case of Yett et al. v. Cook et al., 115 Tex. 175, 268 S.W. 715, 718, 281 S.W. 843, the contention was made that the trial court was authorized to issue an injunction by Subdivision 2 of Article 4643, which "provides that an injunction may issue 'where, pending litigation, it shall be made to appear that a party [is] doing some act respecting the subject of litigation [or otherwise], or is about to do some act or is procuring or suffering the same to be done in violation of the rights of the applicant, which act would tend to render the judgment ineffectual.'" In answering this contention, the court said:

"It is apparent from this that in order for a judge of a court to have power to issue an injunction pending litigation, the acts sought to be enjoined must have two qualities, first, they must *violate some rights of the applicant*; and second, these acts must *tend to render judgment ineffectual.* It is plain that the acts of the respondents here in giving a supersedeas bond did not *violate some rights of the*

*applicant*', for the reason that the statute gave the respondents the right of supersedeas. The act of filing the supersedeas bond was a lawful act, and did not * * * 'tend to render judgment ineffectual', except in a manner provided by law * * *."

While Article 4643 is not applicable to this Court, it appears that the limitation placed on the general equitable powers of the trial court in granting injunctive relief against a *party* to a pending action in aid of its jurisdiction should be persuasive as to the authority of this Court to grant injunctive relief against one not a party for the purpose of enforcing our jurisdiction.

Relators ask that we enjoin stockholders, who do not appear to have violated any right of the applicants, from exercising rights given them by statute and the by-laws of the corporation. The meeting for election of directors is called by the by-laws which specify the time, place, and date for the annual stockholders meeting and that at such meeting the election of directors shall be the fourth item in the order of business. The by-laws provide that notice of each regular meeting shall be given to stockholders, but that "the failure to give notice, or irregularity in the notice, of any regular *annual* meeting shall not invalidate such meeting or any proceedings thereat." (Emphasis added.) In view of the confused state of affairs of this company, it does not seem that the action of respondents in soliciting proxies and making known their intention to exercise their right to appear at the annual stockholders meeting and vote for directors of the corporation would violate any legal right of relators, nor would the probability that respondents would be successful in electing their candidates tend to render the judgment ineffectual, "except in a manner provided by law."

This Court does not have jurisdiction to order an injunction for the purpose of preventing loss or damage to a party to an appeal pending in this Court, or to grant an original injunction. Madison v. Martinez, Tex.Civ.App., 42 S.W.2d 84; Taylor v. American Trust & Savings Bank of El Paso, Tex.Civ.App., 265 S.W. 727; Texas Electric & Ice Co. v. City of Vernon, Tex. Civ.App., 254 S.W. 503.

It seems an insufficient reason for the granting of an injunction by this Court that a failure to do so would probably result in the case on appeal becoming moot. Relators' rights are entitled to be protected from a wrongful invasion. The proper forum in which to seek such protection is the District Court, where adequate facilities for conducting hearings are provided and officers are available to serve citations, preserve testimony, and execute orders. In Houtchens v. Mercer, 119 Tex. 244, 27 S. W.2d 795, the Supreme Court declined to take jurisdiction because the relator had not first applied to the Court of Civil Appeals for the relief to which he was entitled. It would appear that the same principle is applicable here. 21 C.J.S. Courts § 312, pp. 563–564.

Ordinarily an injunction will not issue unless the relator can show that respondent threatens some action which involves a "right" of relator. "A right, as the word is used in this Restatement, is a legally enforceable claim of one person against another, that the other shall do a given act or shall not do a given act." Restatement, Conflict of Laws, § 42b; Property § 1. "The word 'right' is broad enough to embrace whatever may be lawfully claimed." Bankers Home Building & Loan Ass'n v. Wyatt, 139 Tex. 173, 162 S.W.2d 694, 696 "A right [is] * * * a claim recognized or secured by law * * *" Mellinger v. City of Houston, 68 Tex. 36, 3 S.W. 249, 253.

Here we are asked to prevent the exercise on the part of respondents of a "right" to participate in an election for directors of a private corporation for the sole purpose of preserving the "right" of relators to serve as directors of the corporation, in the event they are finally adjudged to

be the duly elected directors, for a sufficient length of time to call a special election, which they may supervise and participate in, for the election of their successors. This does not appear to be that sort of substantial right entitled to protection of this Court to the extent of enjoining the performance of conduct legal in itself, as a result of which respondents, the general public doing business with the corporation, other stockholders in the corporation, and the corporation itself, may well suffer irreparable damage.

I concur in the opinion of Justice WERLEIN, and in the disposition thereby made of the application for injunction.

BELL, Chief Justice (dissenting).

I am unable to agree with the majority of the Court that relators are not entitled to an injunction to be effective pending the disposition of the appeal of the case on its merits enjoining respondents, other than appellants, from voting their stock and that held by them by proxy for election of directors or for any merger of the Columbia General Insurance Company with any other company or for the sale of its assets. My view is that such injunction should be granted.

I am not in disagreement with what the evidence shows, as stated by Justice WERLEIN. However, I would add that respondent Houston Bank & Trust Company, as additional security for its loan, holds an assignment from Thomas Hand, Sr., of insurance commissions as they accrue in an amount of some $87,000, so it is very unlikely this Bank will be injured. While the Bank of the Southwest holds no additional security to pay its loan, the evidence shows Thomas Hand, Sr. has a net worth of about $500,000. Too, my recollection of the evidence is that the Banks bought their stock at the foreclosure sale for 25 cents per share when it was worth 35 cents per share. Such is, of course, quite proper but it is one factor to consider in determining probable loss to them if we should grant an injunction.

The majority and I agree that we have jurisdiction to grant the relief sought and that if we do not do so our jurisdiction will probably be destroyed by the election of new directors because the main appeal will become moot. They refuse to exercise jurisdiction because they consider a balancing of equities favors their action. I am not in disagreement that we should necessarily exercise jurisdiction because we have it, but I am of the view that a balancing of the equities calls for granting the relief sought.

The present appeal of this case marks the third time that some phases of the litigation have been before us. Justice WERLEIN has given citations to where our opinions and one memorandum opinion by the Supreme Court are reported. The opinion really applicable here is that appearing in 335 S.W.2d 410. That appeal was from the judgment of the District Court granting an injunction in favor of appellees enjoining Thomas E. Hand, Jr., et al., from holding a stockholders meeting for the purpose of electing directors or from voting their stock for directors, or participating in any such meeting. The injunction was to be effective until the quo warranto proceeding involved was tried on the merits. The purpose and effect of that injunction was to prevent the stockholders meeting of March 8, 1960. However, before such injunction was issued, the Supreme Court had issued an injunction to the same effect, effective until it could act on appellants' application for writ of error in the first appeal. 333 S.W.2d 108. When the application was refused because of no reversible error, that Court dissolved its injunction and stated in view of the emergency situation presented (the stockholders meeting was due in four days), the trial court could take such action as it deemed proper to protect the rights of all parties. The injunction by the District Court followed. We affirmed the action of the District

**476**

Court, 335 S.W.2d 410. Justice WER-LEIN has made an entirely fair statement of our holdings there. I would only note especially that we there expressly held that the relators here, if they were the legally elected directors, had rights that should be protected by injunction to prevent such rights from being taken away by a new stockholders meeting that would probably make their claims moot. The Supreme Court affirmed our action by refusing an application for writ of error because it found no reversible error. I want to also especially note that in such appeal it was urged that we should dissolve the injunction because of its effect on innocent stockholders not parties to the suit. This we rejected. The rights of appellees were not rights purely individualistic in nature. They are trustees for the stockholders. They represent the stockholders in corporate affairs. Appellees, the trial court has determined, were the duly elected directors. I am not convinced otherwise.

Now, as to the balancing of equities. Relators, the duly elected representatives of the stockholders according to the trial court, are, as are appellants in the appeal in the main case, enjoined from taking office pending appeal, from calling any directors meeting, from voting their stock for directors, or soliciting proxies. They have been so enjoined for some months and have been unable to prepare for the stockholders meeting that respondents propose to use for electing directors. The majority opinion notes that relators represent ownership of some 21,000 shares of stock, while respondent banks own 247,867 shares and hold proxies for 684,989 shares out of a total of 1,243,429 shares. This leaves, including the 21,000 shares of relators, 310,573 shares of stock. The holders of this stock are to be considered. For all we know they may be looking to relators as their elected representatives to look after their interest, because they have not given respondent banks their proxies though all stockholders were solicited. In any event, we, in affirming the trial court, took into

consideration the rights of other stockholders and thought their rights did not outweigh the equities of relators as the duly elected directors. Now we do just the opposite. The hands of relators are tied. They can do nothing for themselves or those whom they represent.

Too, they have been unable to prepare for the meeting because they are enjoined from soliciting proxies.

I, therefore, respectfully enter my dissent.